**AIR TRANSPORT ASSOCIATES, Inc.,**
**a corporation, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14298.**

United States Court of Appeals,
Ninth Circuit.

March 18, 1955.

As Amended April 11, 1955.

---

Patterson, Maxwell & Jones, Tom S. Patterson, Seattle, Washington, for appellant.

Charles P. Moriarty, U. S. Atty., John A. Roberts, Jr., Francis N. Cushman, Asst. U. S. Attys., Seattle, Wash., for appellee.

Before DENMAN, Chief Judge, POPE, Circuit Judge, and MURRAY, District Judge.

MURRAY, District Judge.

This is an appeal from a judgment of the United States District Court for the Western District of Washington, Northern Division, denying the appellant Air Transport Associates, Inc., recovery for damages to one of its air

craft as a result of an accident at Elmendorf Field at Anchorage, Alaska. The case is before this Court on an agreed statement pursuant to Rule 76 of the Federal Rules of Civil Procedure, 28 U. S.C. The facts are briefly as follows: Air Transport Associates, Inc., the appellant, was engaged in the business of transporting passengers and freight for hire by airplane. The appellee owned and operated through the United States Air Force an air base known as Elmendorf Air Force Base, and in connection with such base operated an airfield known as Elmendorf Field. At the time in question the airfield of the appellee was the only airfield at Anchorage, Alaska, suitable for use by large commercial planes; and appellee made such airfield available for use to commercial planes upon payment of compensation therefor and upon the execution by the owners and operators of such planes of a written agreement. The appellant executed such an agreement for the use of the field on August 10, 1950, and paid to the government the charges made for the use of the airfield. It further appears that Anchorage, Alaska, was the principal commercial city in Alaska and the major portion of appellant's business consisted of transportation of freight and passengers between Seattle and Alaska, and particularly Anchorage.

The accident which gave rise to this action occurred after dark on the night of January 8, 1952. One of appellant's planes, carrying passengers, approached Elmendorf Field and signaled the control tower, operated by appellee, and requested landing instructions, and in response to said signal the pilot of said aircraft was directed by the employee of the government in the control tower to land on runway 23 of said airfield. It appears that a truck belonging to the government was stalled on runway 23 of said airfield and that a second truck, belonging to the government, which was attempting to assist the stalled truck, was also on runway 23 and that both of said trucks were without lights. When the aircraft of appellant attempted to land on runway 23, as directed by the control tower, a wing of the plane came in contact with the stalled truck and damage to the plane in the amount of $5690.33 resulted.

After the trial of the case to the District Court, sitting without a jury, the Court made findings of fact and conclusions of law, holding that the accident was occasioned by the negligence of the appellee and found damage sustained by the appellant in the amount of $5690.33. The trial court further found that appellant was without fault and not guilty of contributory negligence. However, appellant was denied recovery upon the sole ground that such recovery was barred by the provisions of the agreement which had been entered into by appellant for the use of the field, and particularly Paragraph 6(a) [1] thereof, and entered judgment for the appellee.

Air Transport Associates, Inc., appealed. The only question presented by the appellant on the appeal is whether the exculpatory provisions in the said agreement for the use of the airfield were a valid defense in this case.

[1]. 6. (a) Air Transport Associates, Inc. for itself, its successors, and assigns, by operation of law or otherwise, does hereby forever release and discharge the United States, its agencies, agents, and/or military, civilian, or contract personnel acting within the scope of their employment, their heirs, successors, executors, administrators or assigns from any and all liabilities, claims, demands, actions, or causes of action of every nature and character whatsoever arising out of or from any act, omission, negligence, quality of supplies, services rendered or manner of performance of services rendered, or any cause whatsoever, in connection with the use of any United States Air Force base or bases or facilities by Air Transport Associates, Inc. or from the sale of services or supplies by the United States Air Force to Air Transport Associates, Inc., excepting such liabilities, claims, demands, actions, or cause of action as result from the willful misconduct of any agency, agent, military, civilian, or contract personnel of or under contract with the United States.

However, the government in its brief on appeal, for the first time in the case raised the question of jurisdiction of the trial court, and this matter will be considered and disposed of first.

Section 2674 of Title 28 U.S.C. provides in part as follows:

"The United States shall be liable * * * to tort claims, in the same manner and to the same extent as a private individual under like circumstances * * *."

Similar language is found in Title 28 U.S.C. § 1346(b), which states in part:

"The district courts * * * shall have exclusive jurisdiction of civil actions * * * caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant * * *."

The government argues that in order for there to be jurisdiction in the District Court of a claim against the government under the Federal Tort Claims Act, the government must be equated to a private individual. In other words, the argument is that because a private individual does not operate a military air base, as was being operated by the government at Anchorage, Alaska, in this case, the government cannot be equated to a private individual and hence jurisdiction does not lie.

 There is no merit to this argument. No distinction is to be drawn between sovereign and proprietary functions in determining liability under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq. Somerset Sea Food Co. v. United States, 4 Cir., 193 F.2d 631; Mid-Central Fish Co. v. United States, D.C.W.D.Mo., 112 F.Supp. 792 at page 795; Cerri v. United States, D. C.N.D.Cal., 80 F.Supp. 831.

 Furthermore, the references in the above quoted sections to liability of the government under circumstances where a private individual would be liable do not go to the question of jurisdiction but rather to the test of allowable claims. As the Supreme Court said in the case of Feres v. United States, 340 U.S. 135, 140, 71 S.Ct. 153, 156, 95 L.Ed. 152:

"Looking to the detail of the Act, it is true that it provides, broadly, that the District Court 'shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages * * *.' This confers jurisdiction to render judgment upon all such claims. But it does not say that all claims must be allowed. Jurisdiction is necessary to deny a claim on its merits as matter of law as much as to adjudge that liability exists. We interpret this language to mean all it says, but no more. Jurisdiction of the defendant now exists where the defendant was immune from suit before; it remains for courts, in exercise of their jurisdiction, to determine whether any claim is recognizable in law.

"For this purpose, the Act goes on to prescribe the test of allowable claims, which is, 'The United States shall be liable * * * in the same manner and to the same extent as a private individual under like circumstances * * *,' with certain exceptions not material here. 28 U.S.C. § 2674, 28 U.S.C.A. § 2674. It will be seen that this is not the creation of new causes of action but acceptance of liability under circumstances that would bring private liability into existence."

From the foregoing language of the Supreme Court in the Feres case, it would appear that the point which the government attempts to raise for the first time in this Court, under the guise of a jurisdictional problem, does not in fact go to jurisdiction, but rather to the test of allowable claims.

However, even if it should be conceded that the language of the Act, making the government liable for tort claims

to the same extent and in the same manner as a private individual under like circumstances, goes to the question of jurisdiction, there would be no lack of jurisdiction in the circumstances of this case. While it is true that Elmendorf airfield, where the accident occurred, was part of a military air base, there is nothing in the record to indicate that the accident was due in whole or in part to the military character of the airfield. Private individuals or private entities may and often do operate airfields, and if such a private individual operating an airfield left trucks parked on a runway of that airfield in the dark, as was done in this case by the government, there would unquestionably be liability on the private individual operating the field for any resultant accidents. Annotation 138 A.L.R. 126.

Turning now to the questions presented by the appellant, its position is that the District Court erred in giving effect to the exculpatory provisions of the agreement under which it used Elmendorf Field. It is contended that the provision is invalid as an illegal attempt on the part of the government to contract against liability for its own negligence because such contracts are against public policy; that it is invalid because to permit such exculpatory provision to stand would in effect amount to a repeal by the department extracting such exculpatory agreement of the Federal Tort Claims Act passed by Congress; that it is invalid because the agreement was executed under business compulsion amounting to duress.

Secondly, appellant contends that the exculpatory provisions of the agreement do not apply to the particular accident involved, (a) because according to its terms the agreement applies to operations between "Alaska and other nations", while the transportation involved at the time of the accident was between Alaska and the United States; (b) because it covers only operations at United States air force bases overseas, and an air force base at Anchorage, Alaska, is not overseas; (c) that by its terms it releases only claims in favor of the appellant in existence at the time of its execution; and (d) that the acts of the appellee constituted wilful misconduct within the meaning of that term as used in the agreement.

■ At first glance, appellant's contention that the agreement does not operate as a release of the government's liability in this particular case for the reasons assigned, appears to have some merit. However, because of what the court hereinafter holds, it is unnecessary to consider in detail this aspect of appellant's case, except to note that all of the circumstances surrounding the execution of the agreement and the use of the Elmendorf Field by appellant indicate it was the intention of the parties that the entire contract and every provision thereof would apply to every flight in which appellant made use of the said field. For example, it appears appellant's principal business consisted of flights between Seattle and Anchorage, and the contract was made with that business in view. Likewise it appears the execution of the agreement was a prerequisite to the use of the field by appellant, and the release provisions of the contract were necessarily intended to apply to flights taking place after the execution of the agreement. Furthermore, there is no evidence indicating the accident resulted from any wilful misconduct of government employees.

■ The Federal Tort Claims Act specifically adopts the law of the place where an accident occurs as the law in accordance with which liability is to be determined. Sections 1346(b), 2671, Title 28 U.S.C.A.; Feres v. U. S., supra; Nolan v. U. S., 4 Cir., 186 F.2d 578; United States v. Gray, 10 Cir., 199 F.2d 239. This adoption of the proper state law applies not only as to the creation of liability but also as to release from liability. Rushford v. United States, 2 Cir., 204 F.2d 831.

■ Proceeding then to the question of the validity or invalidity of the release provisions of the agreement in

question, it is the general rule that a contract as to its validity is to be construed according to the law of the place of contracting unless it is executed with a view to its performance in another place. United States-Alaska Packing Co. v. Luketa, 9 Cir., 58 F.2d 944. While this agreement was executed in Seattle, Washington, the exculpatory provisions contained in Paragraph 6(b) were obviously intended to be operative in Alaska.

■ It therefore appears that if the exculpatory provisions of the agreement in question are invalid either in the State of Washington, the place where the contract was made, or in Alaska, where the contract was to be performed, it cannot stand as a valid defense in this case.

Considering first the validity of the exculpatory agreement under Washington law, the most recent decision of the Washington Supreme Court is the case of Griffith v. Broderick, 27 Wash.2d 901, 182 P.2d 18, 175 A.L.R. 1. In that case the Washington State Court held valid an agreement between Broderick, a real estate broker, and Griffith, a property owner, in which Griffith had agreed to indemnify Broderick from liability for his own negligence in the management of property. Another Washington case in which such an agreement was held valid is Broderson v. Rainier National Park, 187 Wash. 399, 60 P.2d 234, 237. In that case the plaintiff Broderson had executed an exculpatory agreement in renting toboggan equipment from the Park Company. In both of those cases, while the Washington Supreme Court held valid exculpatory agreements, they recognized the general law concerning this type of agreement, and cited with approval the statement of that law found in the American Law Institute, Restatement of Contracts, Volume 2, Section 575(1) as follows:

"'A bargain for exemption from liability for the consequences of a wilful breach of duty is illegal, and a bargain for exemption from liability for the consequences of neg-

ligence is illegal if * * * (b) one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation."

See also Williston on Contracts, Revised Edition, Volume 6, Section 1715C; Annotation 175 A.L.R. 12 and 16.

■ It therefore appears from the foregoing that under the law of Washington an attempted release from future liability is invalid and void as against public policy if the party seeking to be released is engaged in a public or quasi public service or enterprise. It is then seen that if the operation of Elmendorf Field by the government in this case was a public enterprise, the release provisions of the agreement are void in accordance with the law of the State of Washington.

■ The question of whether or not an airport used as a passenger, freight or mail terminal, as Elmendorf Field was by the appellant in this case, is a public service or enterprise under Washington law is put to rest by the provisions of Title 14, R.C.W., and particularly by Section 14.08.020 thereof, which provides in part as follows:

"14.08.020 Airports declared public purpose and necessity.

"The acquisition of any lands for the purpose of establishing airports * * *; the acquisition, establishment, construction, enlargement, improvement, maintenance, equipment, and operation of airports * * * are declared to be public, governmental, and municipal functions, exercised for a public purpose, and matters of public necessity * * *."

Nor does it appear that the result would be different if considered under the law of Alaska. No Alaska decision in point has been cited to the Court and the Court has been unable to find any. However, the territory of Alaska has adopted the common law, Alaska Comp. Laws 1949, § 2-1-2 and from our study

of the matter the Court is convinced that the law of the State of Washington follows the rule of the common law. What has been said then with reference to the law of Washington concerning exculpatory provisions of a contract applies likewise to Alaska.

There can be no doubt that under the law of Alaska the operation of Elmendorf Field was a public enterprise. Federal Aid for Public Airport, Chapter 14, Title 49 U.S.C.A. By that Act, Congress directed the Administrator of the Civil Aeronautics Board to prepare and revise annually a national plan for the development of public airports in the United States, including the territory of Alaska. In Section 1102(b), Title 49 U.S.C.A., is found the following directive concerning airports:

> "The Departments of the Army and the Navy shall consider the views and recommendations of the Administrator to the end that military and naval airports and airport facilities may be made available for civil use to such extent as is feasible."

Apparently Elmendorf Field was made available to appellants for use as a civil field under the foregoing directive of Congress.

Further recognition of airfields as a public necessity and service is found in various sections of the Alaska Compiled Laws Annotated 1949. See Section 16–1–35 (Authorizing cities of the first class to acquire, construct, operate and maintain airports), Chapter 2 of Title 32 (Public Airports). It follows that Elmendorf Field was being operated by the government at the time in question as a public service in addition to being a military air base.

Since the attempted release from liability for future negligence is invalid and void, the case must be reversed, and it is unnecessary to consider the other contentions of the appellant. The case is reversed and remanded to the District Court with directions that judgment be entered for appellant Air Transport Associates, Inc., in the amount of $5690.33.