AMOCO PRODUCTION COMPANY,
Petitioner,

v.

W. C. CHURCH WELDING & CON-
TRACTING, INC., Respondent.

No. 3897.

Supreme Court of Alaska.

June 23, 1978.

Sanford M. Gibbs, Hagans, Smith, Brown, Erwin & Gibbs, Anchorage, for petitioner.

Dale J. Walther, Murphy L. Clark, Anchorage, for respondent.

## OPINION

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

PER CURIAM.

Florien G. Nugent, an employee of Church Welding & Contracting, Inc., was injured due to the alleged negligence of Amoco Production Company while he was aboard an off-shore drilling platform owned by Amoco in Cook Inlet. There appears to be no dispute that Nugent was on the platform in connection with his work as an employee of Church, although there is some dispute as to whether he was actually engaged in his employment at the time that he unhooked a crane sling that had been caught on a handrail. As a result of his efforts to unhook the crane sling, he was injured.

Church had entered into an agreement with Amoco to indemnify Amoco for injuries to Church's employees:

arising out of, incident to, or in connection with any and all operations under this contract and whether or not such losses, costs, expenses and causes of action are occasioned by or incident to or the result of the negligence of [Amoco].

In *Manson-Osberg Co. v. State*, 552 P.2d 654, 659 (Alaska 1976), we upheld a similar indemnity agreement despite the contention that it was against public policy and in violation of the exclusive remedy provision of the Alaska Workmen's Compensation Act.[1] Amoco filed a motion for summary judgment in the case at bar alleging *Manson-Osberg Co.* was controlling and that it was entitled to indemnity from Church. The trial judge denied summary judgment holding that *Manson-Osberg Co.* was not controlling. He attempted to distinguish that case on the basis that Manson-Osberg had been in control of the work which had caused the employee's injury; whereas in the subject case, Amoco rather than Church was in control of the work.

We do not read *Manson-Osberg Co.* as being based on any such distinction. There is no question that Amoco could secure liability insurance protecting against the claim of Nugent. There is, therefore, in the absence of some showing of unscrupulousness or unequal bargaining power, no reason why it could not secure the same protection from Church.[2]

Because the issue involved is one of a controlling question of law on which there is substantial ground for a difference of opinion and where an immediate and present review of the order may materially advance the ultimate termination of the litigation, we have granted the petition for review.[3] We find that *Manson-Osberg Co.* is dispositive, that Amoco is entitled to indemnification from Church and that the superior court erred in denying Amoco's motion for summary judgment. The order of the trial court denying Amoco's motion for summary judgment is reversed.[4]

---

1. AS 23.30.055 provides in part:
   *Exclusiveness of liability.* The liability of an employer [for Workmen's Compensation] is exclusive and in place of all other liability of the employer . . . to the employee, . . . and anyone otherwise entitled to recover damages from the employer . . . on account of the injury or death. . . .

2. *Manson-Osberg Co.* also discusses an exception to contractual indemnity agreements where the enforcement of the clause tends to promote a breach of duty owing to the public at large. 552 P.2d at 659–60. Here the contract clause does not involve any question of a duty to the public at large such as existed in the case of *Northwest Airlines, Inc. v. Alaska*

Airlines, 351 F.2d 253 (9th Cir. 1965), *cert. denied*, 383 U.S. 936, 86 S.Ct. 1068, 15 L.Ed.2d 853 (1966). In *Northwest Airlines,* the court was concerned with the operation of an airport used by many different companies.

3. Appellate Rules 23 and 24.

4. The trial judge held that there was a factual issue as to whether the injury was due to willful and wanton misconduct. Nugent's complaint, however, makes no allegations of willful and wanton misconduct, and thus that issue was not before the court. If willful and wanton misconduct had been proven, however, then Amoco under this agreement would not have

been entitled to indemnification.  The trial
court also considered that there was a factual
issue as to whether Nugent's activities at the
time of his injury came under the provisions of
the indemnity agreement.  It seems clear that
Nugent's very presence on the platform was
incident to or in connection with operation un-
der the contract, and therefore no factual issue
is involved as to whether his injury comes
under the terms of the agreement.