Donald KUHN, Appellant and
Cross-Appellee,

v.

STATE of Alaska, Appellee and
Cross-Appellant.

Nos. 6833, 7080.

Supreme Court of Alaska.

Sept. 7, 1984.

Michael W. Flanigan, Clark, Walther & Flanigan, Anchorage, for appellant and cross-appellee.

Gary Foster and Randy M. Olsen, Asst. Attys. Gen., Fairbanks, Wilson L. Condon, Atty. Gen., Juneau, for appellee and cross-appellant.

Randall J. Weddle, Faulkner, Banfield, Doogan & Holmes, Anchorage, for amicus curiae, Alyeska Pipeline Service Co.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and SHORTELL, Judge.*

* Shortell, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

OPINION ON REHEARING

COMPTON, Justice.

This is an appeal brought by Donald Kuhn from the judgment of the superior court dismissing his action against the State of Alaska. Kuhn had sought recovery for personal injuries and property damage arising from a single-vehicle accident he was involved in while driving his semitractor on the Dalton Highway (also known as the North Road) from Prudhoe Bay to Fairbanks. Kuhn alleged that the accident occurred because of the state's failure to properly maintain the highway. The state moved for summary judgment, contending that Kuhn's action is barred by a regulation requiring the owners of vehicles using the Dalton Highway to indemnify and hold harmless the state for any claims arising from use of the highway. The superior court granted the motion and this appeal followed. For the reasons set forth below, we reverse the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Dalton Highway is the first and only highway that runs from the Yukon River to the Arctic Ocean. It is maintained by the state primarily for the purpose of providing an overland route to the North Slope to foster the commercial development of natural resources in that area.

The highway is not open to the public year-round. Its use is uniquely governed by specific statutes and regulations. AS 19.40.100 provides as follows:

*Use of the [Dalton] [H]ighway by industrial or commercial traffic.* (a) The department shall maintain the highway and keep it open to industrial or commercial traffic throughout the year.

(b) "Industrial or commercial traffic" means

(1) travel necessary and related to resource exploration and development or to support of those activities, if the individual engaged in those activities has all necessary permits;

(2) travel necessary and related to access by local residents to their property; or

(3) motor carriers engaged in commerce which are common carriers or contract carriers regulated by the Alaska Transportation Commission under AS 42.10.

AS 19.40.110 provides as follows: *"Public use of a portion of the highway.* The department shall maintain the section of the highway between the Yukon River and Dietrich Camp and shall keep that section of the highway open to use by the public between June 1 and September 1 each year."

17 AAC 30.010 states: "No vehicle, except an emergency vehicle, may use or travel upon the North Road without a permit issued to the owner of the vehicle by the commissioner or his designated representative under this chapter." 17 AAC 30.-030 provides that "[p]ermits will be issued only for official, industrial, or commercial travel on the North Road ...." The regulation at issue in this case, 17 AAC 30.050, provides in relevant part as follows:

*CONDITIONS AND ENFORCE-MENT.* (a) Permits issued under this chapter will include conditions and provisions which the commissioner or his designated representative determines to be necessary to protect the health, safety, and welfare of the public and travelers on the road. Permittees must agree to comply with these conditions and provisions as well as all applicable state and federal laws by signing the permit.

(b) The permittee shall indemnify and hold harmless the state and its representatives, agents, and employees from all suits, actions, or claims of any character brought because of any injuries or damages sustained by any person or property in consequence of any act or omission, in any way related, directly or indirectly, to the issuance or use of the permit, of the permittee, its representatives, agents or employees, or of the State of Alaska, its representatives, agents, or employees, or of any other person. Each permit will

include this provision in its terms, and the provision must be accepted by the permittee by execution of the permit.

Kuhn was using the Dalton Highway in the course of his business with Drilling Mud Haulers. Kuhn had entered into an "Owner-Operator Equipment Lease Agreement," whereby he leased the semi-tractor he owned, as well as his services as operator of the vehicle, to Drilling Mud Haulers. A permit, required for use of the Dalton Highway, was issued to "Drilling Mud Haulers" and "Donald Kuhn Owner" in September 1980. It contained a "Statement of Vehicle Owner or Agent," specifying that the person signing the permit had read all of the regulations reprinted on the back of the permit, wherein the indemnity provision is set forth. This statement was signed by a dispatcher of Drilling Mud Haulers. In accordance with an instruction on the permit, Kuhn received the original permit and carried it with him in the vehicle at all times he was on the highway. He presented the permit to the security attendant at the North Road checkpoint.

In its motion for summary judgment, the state argued that the indemnity provision included in Kuhn's permit barred his suit. Kuhn opposed the state's motion, contending that the indemnity provision is unenforceable because the state's maintenance of the highway is a "public duty." Permitting enforcement of the indemnity provision arguably would promote a breach of that duty by the state. Kuhn also contended that he was unaware of the indemnity provision and did not actually consent to it, and therefore should not be bound by it. Kuhn's last contention was that the indemnity provision is unenforceable because it is a contract of adhesion.

The superior court rejected Kuhn's contentions and entered a summary judgment for the state, dismissing the action. The court awarded partial attorney's fees to the state, to which both parties objected.

Kuhn appeals from the judgment, contending that the superior court erred in dismissing his action for the reasons he stated in opposition to the motion for summary judgment. Kuhn also appeals from the award of partial attorney's fees. The state, on the other hand, has filed a cross-appeal in which it contends that full attorney's fees should have been awarded. We reverse on the ground that the indemnity provision falls within the "public duty" exception, and hence is unenforceable.[1]

## II. "PUBLIC DUTY" EXCEPTION

The principal issue on appeal is whether the superior court erred in holding that Kuhn is precluded by the indemnity and hold harmless provision from bringing suit against the state for its alleged negligence in maintaining the Dalton Highway. Kuhn argues that the indemnity provision is invalid because it falls within the "public duty" exception to the rule that indemnity and hold harmless provisions agreed to in contracts are enforceable.

The public duty exception has been applied when the duty at issue is owed to the public. The exception was first acknowledged by this court in *Manson-Osberg Co. v. State*, 552 P.2d 654 (Alaska 1976). We stated:

A majority of jurisdictions have rejected the old view that indemnity clauses for an indemnitee's own negligence are unenforceable because they are against public policy.... This revision in judicial thinking is attributable to the widespread contemporary use of insurance, in a variety of business and personal settings, as a means of allocating risks. There are, however, instances when a court will not give effect to a contractual provision indemnifying the indemnitee's own negligence. *These are cases where the indemnity clause tends to promote breach of a duty owing to the public at large. Northwest Airlines, Inc. v. Alaska Airlines, Inc.,* [351 F.2d 253 (9th Cir.

---

1. In view of our resolution of the "public duty" issue, it is unnecessary to address Kuhn's arguments regarding lack of consent and contracts of adhesion, and both parties' arguments regarding attorney's fees.

1965) ]; *Air Transport Associates v. United States*, 221 F.2d 467 (9th Cir. 1955); *Otis Elevator Co. v. Maryland Casualty Co.*, 95 Colo. 99, 33 P.2d 974 (1934). Such is not the case here, and we cannot perceive any public policy objection to holding Manson-Osberg to its indemnity agreement.

552 P.2d at 659–60 (emphasis added, citations omitted). Similar discussions appear in *Stephan & Sons, Inc. v. Municipality of Anchorage*, 629 P.2d 71, 77–78 (Alaska 1981); *Burgess Construction Co. v. State*, 614 P.2d 1380, 1381–82 (Alaska 1980); and *Amoco Production Co. v. W.C. Church Welding & Contracting, Inc.*, 580 P.2d 697, 698 (Alaska 1978).

The state argues that the public duty exception applies only when a duty is owed to the "public at large," and not when it is owed to a smaller subgroup of the general public. Kuhn's accident occurred in December 1980, when all portions of the highway were closed to the public. The state points out that its duty under AS 19.40.100 to "maintain the [Dalton] [H]ighway and keep it open to industrial or commercial traffic" during the remainder of the year is not a duty owed to the general public. It is, instead, a duty owed only to industrial and commercial traffic. Since businesses engaged in the development of the oil and gas industry in Prudhoe Bay are capable of obtaining insurance to protect themselves against potential losses occurring from the use of the Dalton Highway, the state claims that the public duty exception is unnecessary to provide for their protection.

It seems apparent that if the Dalton Highway were open to the public year-round, the indemnity requirement would be unenforceable in all cases because it would tend "to promote breach of a duty owing to the public at large." *Manson-Osberg*, 552 P.2d at 659–60. We have recognized that the state owes a duty to the public to maintain its highways in a safe condition, *Burgess Construction*, 614 P.2d at 1382; its incentive to do so would be reduced if it could avoid all liability for its negligence through indemnity provisions. The provision at issue here can thus be found valid only if, as the state argues, the public duty exception is inapplicable when a duty is owed to less than the entire public.

The decisions establishing the public duty exception in Alaska appear superficially to support the state's argument by limiting the applicability of the exception to circumstances in which a duty is owed to the "public at large." None of these cases has defined "public at large," however, nor have any of them held that the exception cannot be applied when a duty is owed to a subgroup of the general public. Instead, they have focused on the fact that the duty at issue was not one which was owed to the public,[2] or that an indemnification agreement with a single contractor did not affect the state's incentive to use care in performing a duty owed to the rest of the public.[3]

In reviewing those cases which underpin *Manson-Osberg* and the public duty exception, it is difficult to determine the genesis of the term "public at large." None of the cases specifically refers to the "public at large," and none suggests that the exception would not be applicable where a duty is owed to a limited segment of the public.

In *Otis Elevator Co. v. Maryland Casualty Co.*, 33 P.2d 974 (Colo.1934), an indemnity agreement between Otis and the Oil Exchange Building was held unenforceable:

In the case at bar, the public was concerned with the security of such of its

---

2. *See Manson-Osberg v. State*, 552 P.2d 654 (Alaska 1976) (contractor could be required to indemnify state for liability for state's negligence in supervising contractor); *Amoco Productions Co. v. W.C. Church Welding & Contracting, Inc.*, 580 P.2d 697 (Alaska 1978) (subcontractor could be required to indemnify contractor for liability for injury to subcontractor's employee due to contractor's negligence).

3. *See Burgess Construction Co. v. State*, 614 P.2d 1380 (Alaska 1980) (contractor's employees killed on public highway; indemnification clause held valid, since the state's incentive to maintain public roads would not be diminished by an indemnity clause with one contractor); *Stephan & Sons v. Municipality of Anchorage*, 629 P.2d 71 (Alaska 1981).

citizens as would use the elevator maintained for such use. The public had the right to expect and demand that the elevator as a carrier of the public would be kept safe for its use.

33 P.2d at 977. "Public at large" is at best an inference.

*Air Transport Associates, Inc. v. United States*, 221 F.2d 467 (9th Cir.1955), is likewise no authority for a "public at large" restriction. The United States contracted with commercial aircraft carriers for their use of Elmendorf Field in Anchorage, exacting an exculpatory clause as part of the bargain. In an action brought after an airplane crash which allegedly resulted from the government's negligence, the United States defended on the basis of the exculpatory clause. In rejecting the United States' argument, the court noted that an attempted release from future liability is invalid "if the party seeking to be released is engaged in a public or quasi public service or enterprise." *Id.* at 472. The federal court applied what it determined to be Washington state law, as well as Alaska law, there being no Alaska authority to the contrary.

*Northwest Airlines, Inc. v. Alaska Airlines, Inc.* was also decided in the absence of Alaska law, becoming itself the principal case on which Alaska later constructed *Manson-Osberg. Northwest* followed *Air Transport Associates*, although the contract was one of indemnity, not release. The court held that the "terms of the airport's lease to 'Northwest' expressly declare a purpose of public interest and require that 'Northwest' offer the facility for the use of the aeronautical public." *Northwest*, 351 P.2d at 257. It therefore held that Northwest could not require Alaska Airlines to indemnify it for liability stemming from Northwest's negligence in maintaining the airport. Again, the court made no explicit mention of the "public at large."

We conclude that we cannot decide this case solely on the basis of "public at large" language. Instead, we must look at the specific duty which the indemnification agreement might cause the state to neglect

and at the purposes behind the public duty exception.

■ The state's duty to maintain the Dalton Highway is set forth in AS 19.40.-100. Under that statute, the Department of Transportation is required to "maintain the [Dalton] [H]ighway and keep it open to industrial or commercial traffic throughout the year." AS 19.40.100. Members of the public who are to be provided access to the highway year-round include those whose access is "necessary and related to oil and gas exploration and development or support of those activities," 17 AAC 30.-070(3)(A), or is "necessary and related to mineral exploration and development or support of those activities," 17 AAC 30.-070(3)(B), or is "necessary and related to agricultural development and support of that activity," 17 AAC 30.070(3)(C), or is "necessary and related to access by local residents to their property," 17 AAC 30.-070(3)(D), or is "by a vehicle engaged in mass transportation and certified by the Alaska Transportation Commission as a common carrier or which is a private or contract carrier in compliance with AS 42.-10 and 3 AAC 62—3 AAC 76," 17 AAC 30.070(3)(E). The state thus has a duty to those members of the public mentioned in the statute to maintain the highway in a safe condition.

The purposes behind the public duty exception are set forth in *Burgess Construction v. State*, 614 P.2d 1380 (Alaska 1980):

> The public duty exception to which we referred in *Manson-Osberg* is generally held applicable to public utilities and common carriers, and is based on two principles. The first is that those to whom the exception applies should guard against the consequences of their negligence at all times; indemnity agreements, or prospective releases, are thought to eliminate their incentive to do so. The second is that it is thought unfair to allow public service entities to impose liability-avoiding agreements on those they are supposed to serve, since

the latter have no choice but to accept such agreements.

*Id.* at 1381–82 (footnote omitted).

■ The purposes of the exception, as expressed in *Burgess,* support its application in this case. First, the state must be required to guard against the consequences of its negligence. Even though its duty runs only to a specified segment of the population, the state is statutorily required to maintain the highway year-round, and the indemnity provision tends to eliminate the incentive for doing so non-negligently. Contrary to the state's assertion, the highway is in fact open to more than just industrial and commercial developers year-round. Further, the state is obligated to provide the public service of maintaining the highway to those persons. Second, as noted in *Burgess,* it may be unfair to allow the state to impose "liability-avoiding agreements on those [it is] supposed to serve, since the latter have no choice but to accept such agreements." 614 P.2d at 1382 (footnote omitted). Kuhn and other authorized users of this public highway in fact have no choice in the matter. They must use this highway. They must accept this indemnity provision.

Moreover, none of the reasons for refusing to apply the public duty exception in *Burgess* are present in this case. In *Burgess,* Burgess Construction Co. had entered into a contract with the state to build a portion of a road in Wrangell. The contract included a clause by which Burgess was required to "indemnify and save harmless" the state from all claims arising "on account of the operations of" Burgess. Two employees of Burgess were killed at a location off of the site of construction when their vehicle went out of control on an icy state highway. The state was found by the trial court to be 85% responsible for the accident. The state subsequently sought indemnification from Burgess for the judgment it paid. This court concluded that the principles underlying the public duty exception did not require that the exception be applied. It noted that:

The State owes a duty to the public to maintain its highways in a safe condition. That duty, however, is not significantly affected by the indemnity clause in this case, for it only shifts liability for injuries sustained "on account of the operations of the said Contractor." There is no general disincentive to the State to perform its duty to the traveling public.

The relationship between the State and Burgess was not that of one who furnishes public services to one who uses them. Burgess was not compelled to contract with the State as customers of public service organizations often are. Further, Burgess had the power to include in its bid the cost of insurance necessary to cover the liability it was required to assume. For these reasons we do not regard it as unfair for the State to have included an indemnity clause in the contract stipulations.

614 P.2d at 1382 (footnotes omitted).

The facts of this case are significantly different. The relationship between Kuhn and the state was "that of one who furnishes public services to one who uses them," *Burgess,* 614 P.2d at 1382, even though the entire public was not authorized to use the services provided by the state. Unlike Burgess, users of the highway are compelled to contract with the state. Finally, users of the highway cannot pass on to the state the costs of insurance necessary to protect against the state's negligence, as a construction contractor may do with the state when bidding on a state project.

■ We conclude that "public at large" must only mean those persons for whom public services and facilities are performed and maintained, in this case authorized users of the Dalton Highway. Otherwise, there is a disincentive for the state to observe that degree of vigilance necessary for the protection of those very persons it is supposed to serve. We therefore hold that the public duty exception applies to the indemnity provision here in issue. It is not enforceable against Kuhn. Hence, the trial court erred in granting summary judgment to the state on that issue.

The judgment of the superior court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

MOORE, J., not participating.