**ROGERS & BABLER, a DIVISION OF MAPCO ALASKA, INC., an Alaska Corporation, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. S–832.

Supreme Court of Alaska.

Jan. 31, 1986.

Rehearing Denied Feb. 21, 1986.

David H. Thorsness, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellant.

Sanford M. Gibbs, Hagans, Brown & Gibbs, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This case involves the interpretation of an indemnity provision contained in the State of Alaska's 1972 Standard Specifications for Highway Construction (1972 Standards) which was incorporated into a construction contract between the parties to this suit. The State of Alaska seeks indemnity from the general contractor for settlement and defense costs paid by the state on account of a motorcycle accident in the construction area. Contractor claims that the indemnity provision is void as being against public policy under AS 45.45.900 because it purports to indemnify the state for its sole negligence; alternatively it claims that the clause violates the "public duty" exception to the enforcement of indemnity clauses. The state was granted summary judgment and the contractor has appealed from that judgment. We affirm in part, reverse in part and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Rogers & Babler (Rogers) contracted with the State of Alaska for road construction work on the Alaska Department of Highways project "F–FG–M–0538(2) International Airport Road." Before completion of the project, Richard John DeYoung was killed in a motorcycle accident after hitting a central road divider or a "traffic island" near the intersection of Jewel Lake and International Airport Roads.

The traffic island was usually protected by sawhorse type reflective barricades, but they had been knocked over by a car some hours before the motorcycle accident. Officer Kenneth D. Mitchell, an airport safety officer for the state, passed the intersection at least three times before the accident and observed that there were no barricades protecting the island. Mitchell took no action, though he was aware of both the earlier accident and of the availability of over one hundred barricades in the immediate vicinity. Furthermore, it appears that the lane markings on Jewel Lake Road ran directly into, rather than around, the traffic island.

DeYoung's personal representative brought a wrongful death suit against the State of Alaska, the Municipality of Anchorage, Rogers, and other construction companies involved in the project alleging negligence in the construction, lighting, signing, and lane marking around the island. Citing an indemnification clause in the contract, the state tendered defense of the lawsuit to Rogers on three occasions, but was rejected each time. The state settled with plaintiff for $50,000 and Rogers settled with plaintiff for $75,000, and the wrongful death action was dismissed with prejudice.

The state sued Rogers for $50,000 plus actual costs and attorneys fees claiming that Rogers had breached the indemnity provision in the contract by virtue of its refusal to defend, indemnify or save harmless the state from the claims brought by DeYoung's estate. The state moved for summary judgment which was granted by Superior Court Judge Karen L. Hunt. The state was awarded $50,000 plus actual costs, attorneys fees, and interest for a total award of $99,675.61. Rogers appeals the trial court's grant of summary judgment.

## II. DISCUSSION

A. IS THE INDEMNITY PROVISION FROM THE 1972 STANDARD SPECIFICATIONS FOR HIGHWAY CONSTRUCTION NULL AND VOID BECAUSE IT PURPORTS TO INDEMNIFY THE STATE OF ALASKA FOR ITS SOLE NEGLIGENCE IN VIOLATION OF AS 45.45.900?

The state claims that its right to indemnity arises from § 107–1.14 of the 1972 Standards. This section provides in part:

*Responsibility for Damage Claims.* The Contractor shall indemnify and save harmless the Department, its officers and employees, from all suits, actions, or claims of any character brought because

of any injuries or damage received or sustained by any person, persons or property on account of the operations of said Contractor; or on account of or in consequence of any neglect in safeguarding the work; or through use of unacceptable materials in constructing the work; or because of any act or omission, neglect, or misconduct of said Contractor; ...[1]

Rogers contends that this indemnity provision is rendered void and unenforceable by AS 45.45.900.[2]

The statute states:

*Indemnification Agreements Contra to Public Policy.* A provision, clause, covenant, or agreement contained in, collateral to, or affecting any construction contract which *purports to indemnify the promisee* against liability for damages for (1) death or bodily injury to persons, (2) injury to property, (3) design defects or (4) any other loss, damage or expense arising under (1), (2), or (3) of this section *from the sole negligence* or wilful misconduct of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to the promisee, *is against public policy and is void and unenforceable;* however, this provision does not affect the validity of any insurance contract, workers' compensation or agreement issued by an insurer subject to the provisions of AS 21.

(Emphasis added). No cases have construed the indemnity language in the 1972 Standards in light of AS 45.45.900.

1. Does the Indemnity Provision Purport to Indemnify State for its Sole Negligence?

■ The state argues that the indemnity provision is not covered by AS 45.45.900 because the clause does not purport to indemnify the state where it is the sole cause of an accident. The state argues that

"sole" negligence as used by AS 45.45.900 is not the same thing as "own negligence" as used by this court in *Burgess Construction Co. v. State,* 614 P.2d 1380, 1382 (Alaska 1980). Rogers argues that an indemnity clause does not have to expressly state that it covers indemnification for the indemnitee's own negligence to be covered by the statute because AS 45.45.900 reads "purport to indemnify."

This court has held that an indemnity clause like this one is broad enough to cover the state for its own negligence. In *Manson-Osberg Co. v. State,* 552 P.2d 654, 659 (Alaska 1976), this court held that the unambiguous language of indemnity clauses as reasonably construed should be given effect even if the contractual language does not contain words specifying indemnity for the indemnitee's own negligence. In light of the widespread use of insurance as a means of allocating risks among contracting parties, the court rejected the old view that clauses allowing indemnification for an indemnitee's own negligence were unenforceable and against public policy. *Id.*

In *Burgess,* construing an indemnity provision very similar to the one in this case, this court affirmed summary judgment for the state stating that:

[i]f we were to assume that Burgess [contractor] was fault free, the indemnity clause would still be effective as written. Most modern authorities hold that an indemnity clause such as the present one is effective to shift responsibility for an accident where the indemnitee is negligent and the indemnitor is not.

614 P.2d at 1382 (footnotes and citations omitted).

In *Stephan & Sons v. Municipality of Anchorage,* 629 P.2d 71, 78 (Alaska 1981) the court discussed AS 45.45.900 while interpreting another indemnity clause very similar to the one in this case, but did not apply the statute because the contract in

---

1. In the most recent issue of the Standards, published in 1981, this section has been renumbered as § 107–1.13 and changed slightly.

2. This statute was originally passed as AS 45.47.-010 and became effective for all contracts entered into and after September 23, 1975. It was renumbered in 1980. This contract was entered into in 1977.

question had been entered into before the statute's effective date. Therefore, the court stated that the *Burgess* rule applied to construing the indemnity provision. *Id.*

Thus, prior to the enactment of AS 45.-45.900, *Manson-Osberg, Burgess* and *Stephan & Sons* held that an indemnity provision like the one in the 1972 Standards was broad enough to indemnify the state for its own negligence even if the contractor was not negligent. We believe that the cases hold that such indemnity provisions provide for indemnification for the indemnitee's "sole" negligence, even if we did not use that exact language in prior cases. The crux of this case then is what effect the passage of AS 45.45.900 had on the indemnity provision.

### 2. Is the Indemnity Provision Void as Against Public Policy?

■ Rogers states that AS 45.45.900 renders the indemnity provision from the 1972 Standards "void and unenforceable." The state says that Rogers is not arguing that AS 45.45.900 per se bars enforcement of the indemnity provision. However, the language of AS 45.45.900 could be read to imply that all such indemnity provisions are per se void because we have held that such a provision does purport to indemnify the state for its sole negligence.

We are not inclined to accept a reading of the statute that would invalidate the indemnity provisions in every contract entered into between the state and construction contractors. We think AS 45.45.900 should come into effect only when it is determined, as between the state and the contractors, that the state is solely negligent. This court has held that an ambiguous statute should be "construed in the most beneficial way the language will permit to avoid hardship, forfeiture or injustice." [3] (Citations omitted). *City of Anchorage v. Thomas,* 624 P.2d 271, 273 (Alaska 1981). The indemnity provision involved here is not against public policy as a general proposition, but is only against public policy in those instances that it purports to indemnify the state for its negligence in the absence of contractor negligence.

### 3. Were There Genuine Issues of Material Fact Making Summary Judgment Improper With Respect to the Effect of this Indemnity Provision?

■ Rogers claims that summary judgment was improper because the trier of fact did not allocate "percentages of causation" between the parties. If at trial the state is found to be "solely negligent", it claims that AS 45.45.900 would void the indemnity clause and leave no basis for indemnification. Rogers also claims that the accident did not occur "on account of the operations of [the] Contractor." The state argues that adopting Rogers reading of the statute and indemnity provision would frustrate settlements with third parties and thwart the intent of the parties to assign the risk of loss through contract. The state further claims that when it entered into this indemnity agreement it did not intend to contract for a lawsuit.

The indemnity clause may govern in the present case if the accident occurred "on account of the operations of [the] contractor" and if it was not caused by the sole negligence of the state. The state has not established an absence of genuine issues of material fact concerning these points and a trial with respect to them will be necessary. *See* Civil Rule 56.

### B. DOES THE INDEMNITY PROVISION VIOLATE THE PUBLIC DUTY EXCEPTION TO THE GENERAL RULE ALLOWING INDEMNIFICATION FOR ONE'S OWN NEGLIGENCE?

■ Rogers further attacks the indemnity clause by claiming that it violates the

---

**3.** The court went on to quote *Blackard v. City National Bank,* 142 F.Supp. 753, 757 (D.Alaska 1956) where the District Court stated that:

The Court cannot be unmindful of the injustices which may occur from an improper interpretation of terms and must seek, in every instance where the legislature does not speak cogently, to discover that interpretation which best fits with the ordered concepts of justice and equity in the jurisdiction.

*City of Anchorage v. Thomas,* 624 P.2d at 273.

"public duty exception" to the enforcement of contractual indemnity agreements. Rogers emphasizes the fact that DeYoung was a member of the general public and that Officer Mitchell, a state employee, noticed the missing barriers, saw other barriers in the immediate area, and did nothing to rectify the situation. In *Manson-Osberg*, 552 P.2d at 659–60, we acknowledged that in limited circumstances we would not give effect to contractual provisions indemnifying the indemnitee for its own negligence if it promoted breach of a duty owed to the public at large.

The purposes behind the public duty exception are set forth in *Burgess:*

> The public duty exception to which we referred in *Manson-Osberg* is generally held applicable to public utilities and common carriers, and is based on two principles. The first is that those to whom the exception applies should guard against the consequences of their negligence at all times; indemnity agreements, or prospective releases, are thought to eliminate their incentive to do so. The second is that it is thought unfair to allow public service entities to impose liability-avoiding agreements on those they are supposed to serve, since the latter have no choice but to accept such agreements.

614 P.2d at 1381–82 (footnotes omitted). Traditionally this court has held that the public duty exception does not apply to contracts between the state and a construction contractor. *Burgess*, 614 P.2d 1380; *Stephan & Sons*, 629 P.2d 71.

In *Kuhn v. State*, 692 P.2d 261 (Alaska 1984), we held that the public duty exception applied and voided the indemnity agreement contained in a contract between the state and travellers on the Dalton Highway, a restricted access road. In that case, all travellers on the highway were required to sign the contract before travelling on the highway. The court contrasted *Kuhn* with *Burgess*. In *Burgess*, a construction company had entered into a contract with the state to build a road, a situation similar to the case now being considered. *Id.* at 266. Three differences highlighted by the court were that:

1. The relationship between Kuhn and the state was "that of one who furnishes public services to one who uses them." *Burgess*, 614 P.2d at 1382;

2. Users of the Dalton Highway were compelled to contract with the state; and

3. Highway users cannot pass on insurance costs to the state like a construction contractor may do through the bidding process. *Kuhn*, 692 P.2d at 266.

*Kuhn* demonstrates that the public duty exception does not apply to this road construction contract case. First, the fact that DeYoung was a member of the public is irrelevant. Rather, we look at the two parties to the indemnity agreement to see if their relationship leads to policy reasons for using the public duty exception. Second, Officer Mitchell's actions do not give rise to the application of this exception either. His status as a state employee does not change this contract; it remains a voluntary agreement entered into between two sophisticated parties who could allocate risks and costs through the bidding process.

## C. DID ROGERS VIOLATE ITS CONTRACTUAL DUTY TO DEFEND AND BECOME LIABLE AS A MATTER OF LAW?

The state claims that Rogers had two distinct duties: first, to defend the state against all claims, and second, to indemnify the state for all judgments rendered against it. The state analogizes to insurance cases, and claims that Rogers' wrongful refusal to defend leaves it liable for the full amount of the settlement. In response, Rogers argues that AS 45.45.900 has modified *Stephan & Sons, supra,* in which this court held that duties to defend and indemnify are separate and distinct, and argues that the statute has absolved Rogers of its duty to defend.

This case is distinguishable from the case of *Stephan & Sons*. In *Stephan & Sons*, 629 P.2d at 72, the indemnity provision

states that "[t]he contractor shall indemnify, save and hold the City harmless, *and defend* the City." (Emphasis added). Here the indemnity clause states that "[t]he contractor shall indemnify and save harmless the Department." The phrase "save harmless" does not imply a duty to defend, and nothing else in the clause suggest that such a duty exists.[4]

Recently this court remarked in a footnote that the language "indemnify and save harmless" obligates the indemnitor to defend and indemnify the indemnitee. *C.J.M. Construction, Inc. v. Chandler Plumbing & Heating, Inc.*, 708 P.2d 60, n. 5 (Alaska 1985). That language was imprecise and what we intended to make clear, and what we now state, is that the language in the indemnity provision only obligates the indemnitor to reimburse the indemnitee for the costs incurred in defending any claims. There exists no affirmative duty to defend under the language "indemnify and save harmless", but only a duty to reimburse for costs of defense, whether successful or not. This comports with the law in most jurisdictions. *Shannon v. Kaiser Aluminum and Chemical Corp.*, 749 F.2d 689, 690–91 (11th Cir.1985); *Chadwick-BaRoss v. Martin Marietta Corp.*, 483 A.2d 711, 717 (Me.1984); *Farber v. State*, 106 Idaho 677, 682 P.2d 630, 631 (1984); *St. Paul Fire & Marine Ins. Co. v. Crosetti Bros., Inc.*, 256 Or. 576, 475 P.2d 69, 71 (1970).

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings.

---

**4.** The state relies on *Theodore v. Zurich General Accident & Liability Insurance Co.*, 364 P.2d 51 (Alaska 1961) for its argument that Rogers is liable for the whole settlement because of its wrongful refusal to defend. The state claims that *Stephan & Sons* expanded the *Theodore* rule from insurance cases to contractual indemnity actions. Because we hold that there was no duty to defend in this case, we do not need to reach this issue.