**STATE of Alaska, Appellant,**

v.

**KOREAN AIR LINES COMPANY, LTD., Appellee.**

No. S–2438.

Supreme Court of Alaska.

June 2, 1989.

Charles Hagans and Meredith A. Ahearn, Hagans, Brown, Gibbs & Moran, Anchorage, for appellant.

Robert C. Bundy and S. Jay Seymour, Bogle & Gates, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This case involves the interpretation of an indemnity agreement between the State of Alaska (State) and Korean Air Lines Company, Ltd. (KAL) arising out of KAL's lease of terminal facilities at the Anchorage International Airport. This lawsuit arose out of an action filed by Southcentral Air, Inc. (SCA) for damages it incurred when a KAL DC–10 cargo jet collided with its Piper Navajo aircraft on December 23, 1983, as the KAL DC–10 attempted to take off from the Anchorage International Airport on the wrong runway.

KAL brought a third-party claim against the State alleging negligence in the design and maintenance of the runways, taxiways,

signing and lighting at Anchorage International Airport. In its amended answer to KAL's third-party claim, the State raised the affirmative defense that, under the terms of the indemnification clause in its terminal lease agreement with KAL, the State was to be indemnified by KAL for all claims arising out of the accident of December 23, 1983.

The trial court granted summary judgment to KAL on the indemnity issue concluding that the indemnification clause extends only to losses arising out of the terminal premises, and not to the taxiways and runways. The State appeals. We affirm the judgment of the trial court in favor of KAL on the alternative grounds that the public duty exception bars the State from seeking indemnification for its own negligence in the operation, maintenance or design of the runways and taxiways.

## I.

As a consequence of KAL's need for operational space at the Anchorage International Airport, KAL and the State entered into a Lease Agreement (Lease No. ADA–04331) on January 17, 1981, granting KAL use of certain premises in the International Terminal Satellite Building. Paragraph 18 of the agreement provided that KAL, as lessee, would "indemnify, defend and hold harmless the State from any liability, loss, property or personal injury damage resulting from or arising out of any act of commission or omission by KAL or arising from or connected with KAL's use and occupation of the premises or the exercise of its rights and privileges thereto." Another provision required that KAL purchase insurance coverage for at least $50,000 for property loss and $300,000 for personal injury or death.

On August 7, 1984, SCA brought an action against KAL for its losses resulting

from the December 23, 1983 accident. KAL brought a third-party claim against the State alleging that the State was liable to KAL for (1) the uninsured loss of use of KAL's aircraft, (2) uninsured miscellaneous damages and expenses, and (3) contribution for any funds paid to SCA. The State brought a counterclaim against KAL alleging that (1) KAL was liable to the State for clean-up costs, and (2) KAL had the duty to indemnify the State for claims and related losses resulting from the accident.

KAL brought motions for summary judgment on the State's claims for clean-up costs and indemnity. After hearing oral argument, the trial court granted summary judgment in favor of KAL on both issues. The court held that the indemnity clause of the lease agreement extended only to losses occurring on the terminal premises and not to accidents on airport taxiways and runways.

The State moved for partial summary judgment on the issues of KAL's negligence and causation of the accident. On April 9, 1987, the trial court granted the State's motion on both issues. On April 29, 1987, KAL voluntarily dismissed its claims for the uninsured loss of use of its aircraft and miscellaneous damages and expenses. KAL settled SCA's claims out of court. KAL's insurance carrier, Oriental Fire & Marine Company, Ltd. (Oriental), funded the settlement.

On April 19, 1987, the trial court endorsed a stipulation between SCA and the State for the dismissal with prejudice of all SCA claims against the State. On September 17, 1987, the court entered final judgment in favor of KAL on the State's counterclaim for indemnification and in favor of the State against KAL on KAL's claims for which its insurer, Oriental, was subrogated to KAL's rights, and on KAL's nonsubrogated claims against the State. The State appeals the court's ruling on the indemnification claim.[1]

---

**1.** The parties have agreed by stipulation that KAL will dismiss all claims against the State with prejudice. This renders moot the State's third issue on appeal as to the trial court's failure to dismiss all of KAL's claims against the State with prejudice.

## II.

The State argues that the indemnity clause language [2] should be interpreted as requiring KAL to indemnify the State for all acts arising out of or occurring as a result of KAL's use of the airport. The State argues that this duty to indemnify for acts arising out of KAL's use of the airport includes indemnifying the State for its own acts of negligence. In response, KAL argues that the provision only covers KAL's actions on the premises, which are defined in the lease to be the area within the airport terminal and not on the runways or taxiways. KAL asserts that when considering the lease as a whole it is clear that the parties were only concerned with liability on the leased premises themselves.

We find it unnecessary to rule on these contentions because coverage of the accident in question under the indemnity clause would, in any event, be barred by the public duty exception.[3]

In *Manson–Osberg Co. v. State,* 552 P.2d 654 (Alaska 1976), this court recognized an exception to the general rule that an indemnity agreement does not violate public policy by indemnifying the indemnitee for its own negligence:

There are, however, instances when a court will not give effect to a contractual provision indemnifying the indemnitee's own negligence. These are cases where the indemnity clause tends to promote breach of a duty owing to the public at large. *Northwest Airlines, Inc. v. Alaska Airlines, Inc.,* [351 F.2d 253, 258 (9th Cir.1965) ]; *Air Transport Associates v. United States,* 221 F.2d 467 (9th Cir. 1955); *Otis Elevator Co. v. Maryland*

**2.** The disputed indemnity provision reads:

The lessee shall indemnify, defend, and hold harmless from any liability, action, claim, suit, loss, property damage, or personal injury of whatever kind resulting from or arising out of any act of commission or omission by the Lessee, his agents, employees, or customers or arising from or connected with the Lessee's use and occupation of the Premises or the exercise of the rights and privileges granted by this lease.

*Casualty Co.,* 95 Colo. 99, 33 P.2d 974 (1934).

552 P.2d at 659–60.

In *Burgess Constr. Co. v. State,* 614 P.2d 1380 (Alaska 1980), we discussed the exception at length:

The public duty exception to which we referred in *Manson–Osberg* is generally held applicable to public utilities and common carriers, and is based on two principles. The first is that those to whom the exception applies should guard against the consequences of their negligence at all times; indemnity agreements, or prospective releases, are thought to eliminate their incentive to do so.[2] The second is that it is thought unfair to allow public service entities to impose liability-avoiding agreements on those that they are supposed to serve, since the latter have no choice but to accept such agreements.[3]

---

**2.** Thus, in *Northwest Airlines, Inc. v. Alaska Airlines, Inc.,* 351 F.2d 253, 257 (9th Cir.1965), *cert. denied,* 383 U.S. 936, 86 S.Ct. 1068, 15 L.Ed.2d 853 (1966), the court expresses concern about "an indemnity agreement which might tend to inflict upon the air travelling public the possibility of tragic consequences flowing from relaxed vigilance in the management of public airport facilities."

**3.** 15 *Williston on Contracts* § 1751 at 148; *Northwest Airlines, Inc.,* 351 F.2d at 257 n. 2.

*Burgess,* 614 P.2d at 1381–82 (footnote omitted).

The *Northwest Airlines* case cited in both *Manson–Osberg* and *Burgess* is directly applicable to this case. In *Northwest Airlines,* the federal government had leased an airport facility to Northwest Airlines for use as a public facility. Northwest entered into an agreement with Alaska Airlines allowing Alaska to use the airport facilities and requiring Alaska to indemnify Northwest for all claims arising from the use of the facilities or services.[4]

---

**3.** We express no opinion on the trial court's interpretation of the indemnity clause.

**4.** Contrary to the State's characterization of *Northwest Airlines,* the case involved an indemnity agreement rather than an exculpatory clause. 351 F.2d at 255. Nor should the difference in characterization produce a different result. *See Burgess,* 614 P.2d at 1381–82 ("[T]hose to whom the exception applies should guard against the consequences of their negligence at all times; *indemnity agreements, or prospective*

351 F.2d at 255. After an Alaska plane crashed at the airport, Alaska and the families of the deceased crew members brought suit against Northwest alleging that its negligence was the sole proximate cause of the accident. *Id.* The Ninth Circuit held that the public duty exception barred Northwest from seeking indemnification for its own negligence.[5]

The facts of this case implicate both of the principles underlying the public duty exception. The safe operation of a public airport's runways and taxiways is of critical importance to the lives of thousands of people. As the *Northwest Airlines* court correctly noted, any relaxed vigilance in the management of a public airport invites disaster. The present indemnity clause reduces the State's incentive to avoid negligence, not only with respect to KAL and other major carriers with similar lease provisions, but also with respect to the travelling public. The State has a duty to maintain the public's airport for the public's constant access and use.[6] Accidents resulting from the State's negligence infringe on this public access and use.

Consequently, we are not confronted with a situation like that in *Burgess*, where the State's indemnity agreement with its highway contractor was seen as so minor a disincentive to properly maintaining the state highways that the court upheld the provision. *Burgess*, 614 P.2d at 1382; *see also Rogers & Babler, Div. of Mapco Alaska v. State*, 713 P.2d 795, 798–99 (Alaska 1986); *Stephan & Sons v. Municipality of Anchorage*, 629 P.2d 71, 77 (Alaska 1981). The largest source of liability in operating an airport is from the type of commercial freight and passenger air service provided by the large carriers who lease terminal space. While upholding this indemnity agreement would not totally destroy the State's incentive to act with great care, we view it as "general" enough to come within the public duty exception.[7]

Enforcement of the present indemnity provision would also violate the second principle mentioned in *Burgess*. The Anchorage International Airport provides a public service to both the airlines and the travelling public. It would be "unfair" to allow it to impose liability-avoiding agreements on those it is supposed to serve, since the airlines have no choice but to accept such agreements if they wish to use the airport.[8]

Our decision in *Kuhn v. State*, 692 P.2d 261 (Alaska 1984), supports the application of the public duty exception in this case. In *Kuhn*, we applied the public duty exception to void the indemnity agreement contained in a contract between the state and travellers on the Dalton Highway, a restricted access road. We distinguished *Burgess*, highlighting three distinctions between the cases:

> The relationship between Kuhn and the state was "that of one who furnishes public services to one who uses them," *Burgess*, 614 P.2d at 1382, .... Unlike Burgess, users of the highway are com-

*releases,* are thought to eliminate their incentive to do so.") (emphasis added).

5. The court relied on an earlier Ninth Circuit case, *Air Transport Assoc. v. United States*, 221 F.2d 467 (9th Cir.1955), which held that the public duty exception barred the federal government from enforcing liability release provisions for its own negligent operation of the airport.

6. AS 02.15.090(a) provides in relevant part: "In no case may the public be deprived of its rightful, equal and uniform use of the airport, air navigation facility or portion thereof." AS 02.-15.120 provides in relevant part: "The airports and facilities ... shall be at all times available for the use of and accessible to the general public, and maintained as public airports and facilities."

7. *See Burgess*, 614 P.2d at 1382, where a critical factor in the court's holding was the fact that there was "no general disincentive to the State to perform its duty to the traveling public."

8. *See Northwest Airlines*, 351 F.2d at 257 n. 2 ("it is important to note here that 'Northwest' through its agreement with the Government, became a monopolist in the operation of airport facilities on Shemya Island. Its airport was the only airport. It lay beneath a route regularly flown by 'Alaska,' and 'Alaska' was in need of its use for landing and refueling its planes. 'Northwest' was in the far stronger position to insist upon the inclusion of its own terms within its contract with 'Alaska.'") The record in this case similarly shows the State's bargaining power vis-a-vis the airlines.

pelled to contract with the state. Finally, users of the highway cannot pass on to the state the costs of insurance necessary to protect against the state's negligence, as a construction contractor may do with the state when bidding on a state project.

*Kuhn,* 692 P.2d at 266. *See also Rogers & Babler,* 713 P.2d at 799.

The same analysis distinguishes this case from *Burgess.* The relationship between KAL and the State is that of one who provides a public facility to one who uses it. Second, any commercial air carrier who wishes to engage in large-scale air operations in southcentral Alaska is compelled to lease terminal space from the State. Third, KAL is not bidding to provide a service to the State; it is purchasing the use of a state facility. KAL is, therefore, not in a position to pass on its insurance costs to the State.

■ The State argues that the administrative regulations [9] implementing AS 02.-15.090(a) require that it impose these broad indemnification agreements on airport lessees. We note that the public duty exception cannot be applied to invalidate an otherwise valid law or regulation requiring a person under certain circumstances to agree to an indemnity and hold harmless provision. The public duty exception is a common-law doctrine which must yield to valid legislative requirements of indemnity.[10]

Alaska Statute 02.15.090(a) requires that any conditions placed on a lease "be established with due regard to the property and improvements used and expense to the state." This mandate provides sufficient justification for the regulatory requirement

that all terminal leases contain an indemnity provision. It does not, at least expressly, authorize an indemnity agreement pertaining to the use of state property and improvements which are not the subject of a lease.

■ We conclude that to require indemnification for the State's own negligence on the runways and taxiways would run afoul of the State's other obligations to the public. While AS 02.15.090(a) allows for terms and conditions to be imposed on airport lessees, the statute also provides that "[i]n no case may the public be deprived of its rightful, equal and uniform use of the airport, air navigation facility or portion thereof." In addition, AS 02.15.010 provides that: "The purpose of this chapter is to further the public interest in aeronautical progress by providing for the protection of persons and promotion of safety in aeronautics through appropriate measures." To require airport lessees to indemnify the State for its own negligence in connection with the airport's runways and taxiways would violate these statutory provisions. We therefore conclude that to the extent that 17 AAC 40.360(19) requires indemnification agreements covering these operations, the regulation is invalid since it exceeds its statutory authority.[11] We construe AS 02.15.090 and AS 02.15.010 as consistent with the public duty exception and conclude that they do not act as an express statutory bar to its application in this case.

■ We therefore conclude that the public duty exception prevents the State from seeking indemnification from KAL for the State's own negligence in the operation,

**9.** 17 AAC 40.360(19) (eff. 7/28/59) provides in part:

> The Lessee shall indemnify, defend and save harmless the Lessor from any and all liabilities, actions, claims, suits, losses, damages, damage to property, and injuries to persons, of whatsoever kind or nature ... arising from or out of the Lessee's occupation or use of the premises or privileges granted.

**10.** This argument was not raised by the parties in *Kuhn,* 692 P.2d at 262–63, and thus was not addressed by the court. In *State v. Alyeska Pipeline Service Co.,* 723 P.2d 76, 78–79 (Alaska

1986), the Dalton Highway indemnity regulation was struck down, not because it was overridden by the public duty exception, but because it was not authorized by statute.

**11.** AS 44.62.030 provides:

> No regulation adopted is valid or effective unless consistent with the statute and reasonably necessary to carry out the purposes of the statute.

*See also Alyeska Pipeline Serv. Co.,* 723 P.2d at 78.

maintenance or design of the taxiways and runways of Anchorage International Airport.

## III.

In conclusion, the judgment of the trial court is affirmed on the alternative ground that the public duty exception bars the State from seeking indemnification for its own negligence in the operation, maintenance or design of the runways and taxiways.

AFFIRMED.