**HOFFMAN CONSTRUCTION COMPANY OF ALASKA,**
Appellant,

v.

**U.S. FABRICATION & ERECTION, INC.,**
and the Sisters of Providence of Washington, d/b/a Providence Hospital, Appellees.

No. S–9116.

Supreme Court of Alaska.

May 11, 2001.

Rehearing Denied Aug. 30, 2001.

Sanford M. Gibbs, Law Offices of Brown, Waller & Gibbs, Anchorage, for Appellant.

Bruce E. Davison & Joseph A. Pollock, Davison & Davison, Inc., Anchorage, for Appellee U.S. Fabrication & Erection, Inc.

Robert J. Dickson and John M. Conway, Atkinson, Conway & Gagnon, Anchorage, for Appellee The Sisters of Providence of Washington.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. *INTRODUCTION*

Four U.S. Fabrication & Erection, Inc. workers brought suit alleging that they had been exposed to asbestos while working at a construction project at Providence Hospital in Anchorage. The general contractor on the project, Hoffman Construction, settled the suit, and sought indemnity and defense costs from subcontractor U.S. Fabrication & Erection, Inc. (USF & E) under a contractual indemnity provision; however, USF & E simultaneously claimed indemnity and defense from Hoffman under an implied contractual theory. Providence also sought indemnity and defense costs from Hoffman under a contractual indemnity provision. The superior court held that both USF & E and Providence were entitled to indemnity and defense from Hoffman. For the reasons stated below, we affirm in part and reverse in part.

## II. *FACTS AND PROCEEDINGS*

In November 1992 the Sisters of Providence in Washington, a nonprofit corporation which owns and operates the Providence Alaska Medical Center in Anchorage, Alaska, entered into a construction contract with Hoffman Construction Company of Alaska. Hoffman agreed to be the general contractor for new construction and renovation of buildings on the Providence Hospital campus.

The renovation work on Providence Hospital was to involve the abatement of asbestos, and the original Providence/Hoffman contract included asbestos abatement within the scope of Hoffman's duties. However, in an amendment to the Providence/Hoffman contract (Amendment # 1), the parties removed asbestos abatement responsibilities from the scope of Hoffman's duties under the contract. Asbestos abatement on the project was instead handled by EHS Alaska, Inc., which provided consulting services, and Locher Interests, which was the project manager for asbestos abatement. However, under Amendment # 1, Hoffman retained the duty

to coordinate its work and the work of its subcontractors on the asbestos abatement.

Amendment #1 to the Providence/Hoffman contract also added seismic upgrade work on the existing South Tower building on the Providence Hospital campus. This work consisted of strengthening the structural steel frame of the South Tower by adding steel beams, braces, and columns to the interior structure of the building. Hoffman subcontracted with USF & E to do the steel erection work on the South Tower. Both construction and asbestos abatement work went on simultaneously at the South Tower throughout 1994.

Both the Providence/Hoffman contract and the Hoffman/USF & E contract contained indemnity provisions. The Providence/Hoffman contract's indemnity clause required Hoffman to indemnify and defend Providence for any claim "arising out of ... the performance of this Construction Contract, regardless of whether or not it is caused in part by a party indemnified hereunder." The Providence/Hoffman indemnity clause also made Hoffman responsible for any claims "arising

out of or resulting from [Hoffman's] breach of [the Providence/Hoffman contract], or any unlawful act or omission of [Hoffman and its agents]." [1]

The Hoffman/USF & E contract also contained an indemnity clause, which required USF & E to indemnify and defend Hoffman for any claims "directly or indirectly arising out of ... any failure of [USF & E] to perform any of the terms and conditions of this Subcontract," or for any claims arising out of USF & E's "performance of or failure to perform" its work under the subcontract. The Hoffman/USF & E indemnity clause also made USF & E responsible for any claims "arising from injuries, including death to [USF & E's] employees," unless the injuries were caused by or resulted from "the sole negligence of [Hoffman]." [2]

On July 3, 1996, Floyd Brooks, a former USF & E employee, filed a personal injury action in Anchorage superior court against USF & E, Hoffman, and Providence. In this suit, Brooks alleged that, through the negligence of USF & E, Hoffman, and Provi-

1. The full text of the Providence/Hoffman indemnity clause read as follows:

   14.2. *Indemnity*

   14.2.1. To the fullest extent permitted by law, CONTRACTOR shall indemnify, defend, and hold harmless PROVIDENCE, the Project Coordinator, ARCHITECT, and their employees and agents, from and against all claims, damages, losses, liabilities and expenses, including attorney's fees, arising out of or resulting from the performance of this Construction Contract, regardless of whether or not it is caused in part by a party indemnified hereunder.

   14.2.2. To the fullest extent permitted by law, CONTRACTOR shall indemnify, defend, and hold harmless PROVIDENCE, the Project Coordinator, ARCHITECT, and their employees and agents, from and against all claims, damages, losses, liabilities and expenses, including attorney's fees, arising out of or resulting from CONTRACTOR'S breach of this Construction Contract, or any unlawful act or omission of CONTRACTOR, any subcontractor, anyone directly or indirectly employed by CONTRACTOR or any subcontractor, or anyone for whose acts CONTRACTOR or any subcontractor may be liable.

2. The full text of the Hoffman/USF & E indemnity clause reads as follows:

   Subcontractor in addition to his obligations to provide insurance as required by this Subcontract, shall indemnify, defend and save harmless Contractor and its officers, agents and employees from and against all claims, loss, damage, liability, costs, charge or expense (including attorneys' fees) directly or indirectly arising out of or resulting from any failure of Subcontractor to perform any of the terms and conditions of this Subcontract or the performance of or failure to perform the Work or in any manner caused or claimed to be caused by any act, inaction, fault or negligence of Subcontractor or anyone acting on his behalf, even though the same may have resulted from the joint, concurring or contributory act or negligence of Contractor, or those in privity of contract with Contractor, unless the same be caused by the sole negligence or willful misconduct of Contractor, or those in privity of contract with Contractor....

   In addition to the insurance and indemnity requirements set forth above, Subcontractor expressly agrees to defend, indemnify and hold Owner, Its Architects and Engineers, Hoffman Corporation, Its subsidiaries, their officers, agents and employees harmless from all claims and loss (including reasonable attorney fees) arising from injuries, including death, to its employees and employees of its subcontractors... The indemnities assumed by Subcontractor shall not, however, extend to injuries or damages caused by or resulting from the sole negligence of the Contractor.

dence, Brooks and other workers were exposed to asbestos in the course of their work on the South Tower. Brooks initially attempted to maintain the suit as a class action, but later converted it to a direct action, with three other USF & E employees as co-plaintiffs. The plaintiffs specifically alleged that they were exposed to asbestos while working on the South Tower some time before July 24, 1994. While working on the structural steel, the Brooks plaintiffs picked up scraps of material that had been blown into their area by the wind; later they came to believe that this material was asbestos. The Brooks plaintiffs claimed that their work area was not cleared of asbestos until after they entered the area.

During the summer of 1998, the Brooks plaintiffs settled with all of the parties by accepting a payment of $25,000 from Hoffman and $75,000 from USF & E's insurance carrier. On January 5, 1998, Providence filed a motion for summary judgment, seeking a ruling that Hoffman owed Providence a duty of indemnity and a duty of defense under the indemnity clause in the Providence/Hoffman contract. On February 27, 1998, Hoffman filed its opposition to Providence's motion as well as a cross-motion against Providence, also seeking indemnity and defense costs. On November 20, 1998, the superior court issued an order granting Providence's motion and denying Hoffman's cross-motion, ruling that Hoffman owed Providence a duty of indemnity and a duty of defense. Hoffman now appeals the superior court's grant of Providence's motion for summary judgment.

On August 11, 1998, Hoffman filed a motion for summary judgment against USF & E seeking a ruling that USF & E had a duty to defend and indemnify Hoffman under the indemnity clause in the Hoffman/USF & E contract. On September 1, 1998, USF & E filed its opposition to Hoffman's motion as well as a cross-motion for summary judgment seeking recovery of its defense costs based on an implied contractual indemnity theory. In its November 20, 1998 order, the superior court denied Hoffman's motion against USF & E and granted USF & E's cross-motion, holding that Hoffman owed USF & E a duty of indemnity and a duty of defense. On April 22, 1999, the superior court issued partial final judgments in favor of Providence and USF & E pursuant to Civil Rule 54(b). Hoffman now appeals both the denial of its motion for summary judgment against USF & E and the grant of USF & E's cross-motion for summary judgment.

## III. *STANDARD OF REVIEW*

■ This is an appeal of summary judgment entered by the superior court, and we will apply de novo review.[3] We will affirm a summary judgment if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law.[4] When making this determination, we will draw all reasonable inferences in favor of the non-moving party.[5]

■ We are not bound by the reasoning articulated by the superior court and can affirm a grant of summary judgment on alternative grounds, including grounds not advanced by the superior court or the parties.[6] Moreover, we will consider any matter appearing in the record, even if not passed upon by the superior court, in defense of the judgment.[7] However, we will not consider arguments that were not raised below, unless the issues establish plain error, or the issues (1) do not depend upon new facts, (2) are closely related to other arguments at trial, and (3) could have been gleaned from the pleadings.[8]

■ This appeal requires us to interpret the Providence/Hoffman and Hoffman/USF & E contracts. If there is no dispute about

---

**3.** *See Moore v. Allstate Ins. Co.,* 995 P.2d 231, 233 (Alaska 2000).

**4.** *See id.;* Alaska R.Civ.P. 56(c).

**5.** *See Moore,* 995 P.2d at 233.

**6.** *See Wright v. State,* 824 P.2d 718, 720 (Alaska 1992); *Moore,* 995 P.2d at 233.

**7.** *See Wright,* 824 P.2d at 720.

**8.** *See State Farm Auto. Ins. Co. v. Raymer,* 977 P.2d 706, 711 (Alaska 1999).

the surrounding circumstances of the formation of an indemnity contract, the interpretation of the contract's language is a matter of law for us to determine.[9] When interpreting contracts, the goal is to give effect to the reasonable expectations of the parties.[10] To determine the intent of the parties, we will look to the written contract as well as extrinsic evidence regarding the parties' intent at the time the contract was made.[11] Where there is conflicting extrinsic evidence, the court, rather than the jury, must decide the meaning except where the written language, read in context, is reasonably susceptible to both asserted meanings.[12]

## IV. DISCUSSION

### A. The Superior Court Properly Held that Hoffman Has a Duty to Defend Providence.

The superior court granted Providence's motion for summary judgment, ruling that Hoffman owed Providence a duty of indemnity and a duty of defense. Hoffman appeals this decision.

In order to decide whether the superior court properly granted Providence's motion, we must address three issues: (1) the distinction between the duty to defend and the duty to indemnify; (2) the scope of the indemnity clause in the Providence/Hoffman contract; and (3) any applicable exceptions that could prevent enforcement of the Providence/Hoffman contract. An analysis of these three issues shows that, as a matter of law, the indemnity clause in the Providence/Hoffman contract requires Hoffman to defend Providence under the circumstances presented here.

### 1. The distinction between the duty to defend and the duty to indemnify

■ The duty to defend in an indemnity clause like the one in the Providence/Hoff-

man contract is triggered when the indemnitee requires a defense; however, the duty to indemnify is not triggered until the indemnitee is liable for damages. The duty to defend is triggered merely by claims of injury that fall within the scope of the indemnity clause, requiring a defense for the indemnitee and requiring the indemnitor to provide that defense. In Stephan & Sons, Inc. v. Municipality of Anchorage, we stated that "[w]e think that the duty to defend attaches as long as the principal case continues to include a cause of action [within the scope of the indemnity clause]."[13] This means that, for the duty of defense, the "true facts" are irrelevant; a duty to defend can be found even if there are genuine issues of material fact concerning liability for the plaintiffs' injuries.[14] However, for the duty to indemnify, the issue of causation of the plaintiffs' injuries may be relevant because there is a duty to indemnify only when the indemnitee is liable for damages.[15]

■ Hoffman claims that summary judgment in favor of Providence cannot be affirmed because there is an unresolved factual issue concerning the cause of the Brooks plaintiffs' alleged exposure. However, as we held in Stephan & Sons, causation is immaterial to the duty of defense; Hoffman has a duty to defend Providence as a matter of law if the claims asserted by the Brooks plaintiffs are within the scope of the indemnity clause in the Providence/Hoffman contract.[16]

### 2. The Brooks plaintiffs' claims are within the scope of the Providence/Hoffman indemnity clause.

■ In the first part of the Providence/Hoffman indemnity clause, Hoffman promises to indemnify and defend Providence for any claim "arising out of . . . the

---

**9.** See Duty Free Shoppers Group Ltd. v. State, 777 P.2d 649, 652 (Alaska 1989); C.J.M. Constr., Inc. v. Chandler Plumbing & Heating, Inc., 708 P.2d 60, 64 (Alaska 1985).

**10.** See Larsen v. Municipality of Anchorage, 993 P.2d 428, 431 (Alaska 1999).

**11.** See id.

**12.** See id.

**13.** 629 P.2d 71, 76 (Alaska 1981).

**14.** See id. at 76–77.

**15.** See id. at 73, 75–76.

**16.** Id. at 76–77.

performance of this construction contract, regardless of whether or not it is caused in part by a party indemnified hereunder." Hoffman claims that the Brooks plaintiffs' claims did not "arise out of" Hoffman's performance of the contract because its performance did not include any asbestos abatement responsibilities. Therefore, Hoffman argues that claims of asbestos exposure could not arise out of Hoffman's performance since its performance had nothing to do with asbestos.

We have interpreted similar indemnity clauses very broadly in the past and found that an employee's claims "arise out of" an indemnitor's performance if the injury occurs when the employee is on the job that is the subject of the indemnification agreement. In *Burgess Construction Co. v. State*, the state and a construction contractor (Burgess) contracted to build a road.[17] Their contract included an indemnity clause. Two Burgess employees were killed in an accident, and wrongful death actions were brought against the state. The state then brought an indemnity action against Burgess. We summarized the text of the indemnity clause as follows:

> Burgess was required to "indemnify and save harmless" the State from all claims brought because of injuries received by any person "on account of the operations of Contractor." [18]

We concluded that the accident in *Burgess* was within the scope of the indemnity clause because "the accident victims were Burgess'

employees engaged in operations in fulfillment of the contract at the time of the accident." [19]

In *Duty Free Shoppers Group Ltd. v. State*, a shop at the Anchorage International Airport had an indemnity clause as part of its lease with the state.[20] An employee of Duty Free sat down in a broken airport lounge chair during her coffee break and was injured. The employee brought suit and the state settled; then the state sought to enforce the indemnity clause against Duty Free. The text of the indemnity clause read as follows:

> [Duty Free] shall indemnify and save harmless [the state] ... from all claims ... aris[ing] or result[ing] from any acts or omissions of [Duty Free] ... in connection with the use or occupancy of the Premises or any other portion of the Airport.[21]

We concluded that the scope of the *Duty Free Shoppers* indemnity clause was broad enough to include the accident in that case, because the accident happened to the indemnitor's employee while she was on the job at the airport.[22]

In *Burgess* and *Duty Free Shoppers*, we held that a clause requiring indemnity and defense for claims brought "on account of" or "in connection with" the indemnitor's work is broad enough to include any claims for injuries sustained by the indemnitor's employees while on the job that is the subject of the indemnity clause.[23] We also held that fault

17. 614 P.2d 1380 (Alaska 1980).

18. *Id.* at 1381.

19. *Id.* at 1383.

20. 777 P.2d 649 (Alaska 1989).

21. *Id.* at 651.

22. *Id.* at 652–53.

23. *Burgess*, 614 P.2d at 1381–83; *Duty Free Shoppers*, 777 P.2d at 651–53. Several other jurisdictions have also concluded that similar indemnity clauses are broad enough to include all claims for injury incurred by the indemnitor's employees working at the jobsite. *See Cirrito v. Turner Constr. Co.*, 189 Conn. 701, 458 A.2d 678, 681 (1983); *Perkins v. Rubicon, Inc.*, 563 So.2d 258, 259 (La.1990); *Vitty v. D.C.P. Corp.*, 268 N.J.Super. 447, 633 A.2d 1040, 1043 (1993); *O'Connor v. Serge Elevator Co.*, 58 N.Y.2d 655, 458 N.Y.S.2d 518, 444 N.E.2d 982, 983 (1982); *Wallace v. Sherwood Constr. Co.*, 877 P.2d 632, 633–34 (Okla.App.1994). However, we acknowledge that courts in other jurisdictions have come to the opposite conclusion, holding that the employee's mere presence and work activity on the jobsite is not enough to trigger such an indemnity clause. *See National Hydro Systems v. M.A. Mortenson Co.*, 529 N.W.2d 690, 693 (Minn. 1995); *Hershey Foods Corp. v. General Elec. Serv. Co.*, 422 Pa.Super. 143, 619 A.2d 285, 290 (1992); *Robert H. Smith, Inc. v. Tennessee Tile, Inc.*, 719 S.W.2d 385, 388 (Tex.App.1986); *Jones v. Strom Constr. Co., Inc.*, 84 Wash.2d 518, 527 P.2d 1115, 1118 (1974). Because of our earlier decisions in *Burgess* and *Duty Free Shoppers*, we decline to follow these latter jurisdictions.

was immaterial to this analysis.[24]

The Providence/Hoffman indemnity clause is similar to those considered in *Burgess* and *Duty Free Shoppers*. Because the Brooks plaintiffs were on the jobsite performing work for USF & E, and in turn, for Hoffman, their claims "arise out of" Hoffman's performance of the Providence/Hoffman contract, and the claims fall within the scope of the first part of the Providence/Hoffman indemnity clause.[25]

3. *Alaska Statute 45.45.900 and the policy of "nondelegable duties" do not apply to prevent enforcement of the Providence/Hoffman indemnity clause.*

Hoffman claims that the Providence/Hoffman indemnity clause is rendered unenforceable by (a) AS 45.45.900, or by (b) the public policy of "nondelegable duties." However, neither of these applies under the circumstances here, and the Providence/Hoffman indemnity clause is fully enforceable.

a. *Alaska Statute 45.45.900*

■ Alaska Statute 45.45.900 limits the enforceability of indemnification clauses: it requires that such clauses not be enforced if they serve to indemnify the indemnitee from its own sole negligence or willful misconduct. Hoffman claims that the trial court read the Providence/Hoffman indemnity clause so broadly that, under this reading, Hoffman could be responsible to indemnify Providence for Providence's sole negligence. Because there is an issue of material fact as to whether the plaintiffs' claims were caused by Providence's sole negligence, Hoffman claims, as a matter of law this court cannot decide that the clause creates a duty to indemnify or defend, because the clause might be invalid under AS 45.45.900. Therefore, Hoffman argues, we should remand this case for resolution of the issue of material fact.

■ However, Hoffman's interpretation of AS 45.45.900 is incorrect. As we have previously held, AS 45.45.900 only invalidates an indemnity clause if the clause purports to indemnify the indemnitee for the indemnitee's sole negligence.[26] The Providence/Hoffman indemnity clause does not purport to indemnify Providence for Provi-

**24.** *Duty Free Shoppers*, 777 P.2d at 652–53; *Burgess*, 614 P.2d at 1382–83.

**25.** Hoffman also claims that extrinsic evidence shows that the Providence/Hoffman indemnity clause should be read narrowly. Hoffman notes that while Providence's contracts with its abatement contractors contained asbestos risk insurance requirements, the Providence/Hoffman contract contained no such requirement. Hoffman claims that this indicates that the parties reasonably expected that Hoffman would have no asbestos-related responsibilities under the Providence/Hoffman contract. However, this is irrelevant. As previously noted, even if Hoffman had no asbestos-related responsibilities, the scope of the Providence/Hoffman indemnity clause is broad enough to include any claims of injury brought by employees on the job working for Hoffman. Because we find that the Brooks plaintiffs' claims are within the scope of the first part of the Providence/Hoffman indemnity clause, we need not address the second part of that clause.

**26.** *See Aetna Cas. & Sur. Co. v. Marion Equip. Co.*, 894 P.2d 664, 670 (Alaska 1995). Additionally, AS 45.45.900 only applies to invalidate an indemnity clause if the clause is actually applied, as between the parties, to indemnify an indemnitee for the indemnitee's own sole negligence. *See Rogers & Babler v. State*, 713 P.2d 795, 798 (Alaska 1986) ("We think AS 45.45.900 should come into effect only when it is determined, as between [the parties], that the [indemnitee] is solely negligent."). In the present case, this second requirement is irrelevant because we find that the Providence/Hoffman indemnity clause fails the first requirement: it does not purport to indemnify Providence for its sole negligence. Providence claims that AS 45.45.900 does not apply to invalidate the clause unless Providence alone is 100% at fault. However, this is not strictly correct; AS 45.45.900 would invalidate the clause if applied when Providence and its abatement contractors were collectively 100% at fault. As we held in *Rogers & Babler*: "The indemnity provision involved here ... is only against public policy in those instances that it purports to indemnify [the indemnitee] for its negligence in the absence of [the indemnitor's] negligence." *Rogers & Babler*, 713 P.2d at 798. If Providence and its abatement contractors were jointly negligent, while Hoffman was not at all at fault, the indemnity clause would serve to indemnify Providence "for its negligence in the absence of Hoffman's negligence," an outcome forbidden by *Rogers & Babler*. *See also* AS 45.45.900 ("[D]amage or expense arising ... from the sole negligence or wilful misconduct of the promisee *or the promisee's agents, servants or independent contractors* who are directly responsible to the promisee, is against public policy and is void and unenforceable.") (emphasis added).

dence's sole negligence since the injuries caused by Providence's sole negligence would be outside the scope of the indemnity clause. The first part of the Providence/Hoffman indemnity clause indemnifies Providence for any claim "arising out of … the performance of this construction contract, regardless of whether or not it is caused *in part* by a party indemnified hereunder." (Emphasis added.) The negative implication is that a claim caused *wholly* by Providence is not within the scope of the indemnity clause. The second part of the Providence/Hoffman indemnity clause makes Hoffman responsible for any claims "arising out of or resulting from [Hoffman's] breach of [the Providence/Hoffman contract], or any unlawful act or omission of [Hoffman and its agents]." An injury caused by Providence's sole negligence would be outside the scope of this part of the clause as well, because such an injury could not possibly arise from Hoffman's "breach" or "unlawful acts." Neither part of the Providence/Hoffman indemnity clause purports to indemnify Hoffman for Providence's sole negligence. Therefore, as a matter of law, AS 45.45.900 does not invalidate the Providence/Hoffman indemnity clause.

b. *The public policy of "nondelegable" duties*

▮ Hoffman argues that, because Providence was working with asbestos, Providence had a nondelegable duty to protect the workers and independent contractors from asbestos and the Providence/Hoffman indemnity clause should not be enforced.

▮ However, Hoffman failed to make this argument below, and therefore it is waived. As a general rule, we will not consider arguments for the first time on appeal.[27] In *McConnell v. State*, we provided for an exception to this waiver rule:

> We will consider arguments not raised explicitly in the trial court … if the issue is 1) not dependent on any new or contro-

verted facts; 2) closely related to the appellant's trial court arguments; and 3) could have been gleaned from the pleadings.[28]

Hoffman admits that it failed to make its argument on nondelegable duties below, but it claims that the exception stated in *McConnell* applies. Hoffman claims that the first two *McConnell* requirements are fulfilled, because: (1) the facts supporting Hoffman's nondelegable duties argument are already in the record; and (2) Hoffman argued in the superior court that Providence should not be able to escape liability for its own asbestos abatement activities. Hoffman does not discuss the third prong of *McConnell*, whether its nondelegable duties argument could be "gleaned from the pleadings."

Hoffman fails to satisfy the exception to the waiver rule stated in *McConnell*. The first *McConnell* requirement is satisfied because the facts supporting Hoffman's nondelegable duties argument are already in the record. But Hoffman does not meet the second *McConnell* requirement. The nondelegable duties argument made for the first time on appeal is not like any argument Hoffman made in the superior court. Hoffman claims that its argument raised below (already discussed in this opinion) that AS 45.45.900 invalidates the indemnity clause was similar to the nondelegable duties argument now raised. However, the argument raised below is not similar to Hoffman's new argument. The application of AS 45.45.900's statutory limitations to the language of the Providence/Hoffman indemnity clause does not bear on whether asbestos abatement is an ultra-hazardous activity that gives rise to nondelegable duties. Hoffman has waived its nondelegable duties argument and we will not consider it further.[29]

We affirm the superior court's ruling that Hoffman has a duty to defend Providence. Hoffman's duty is triggered by any claim of injury that is within the scope of the indemnity clause; the claims made by the Brooks

---

27. *See Frost v. Ayojiak*, 957 P.2d 1353, 1355–56 (Alaska 1998).

28. 991 P.2d 178, 183 (Alaska 1999) (internal quotations and citations omitted).

29. We have also stated that waiver will not be found if the issue raises plain error. *See State Farm Auto. Ins. Co. v. Raymer*, 977 P.2d 706, 711 (Alaska 1999). There is no such plain error here.

plaintiffs are in fact within the scope of the Providence/Hoffman indemnity clause. The indemnity clause is fully enforceable despite AS 45.45.900, and Hoffman has waived its nondelegable duties argument.

### B. *The Superior Court Erred in Holding that Hoffman Has a Duty to Indemnify Providence.*

In its November 20, 1998 order, the superior court granted Providence's motion for summary judgment and found that Hoffman has a duty to indemnify Providence. Because there are issues of material fact as to causation of and liability for the Brooks plaintiffs' alleged exposure, we reverse this ruling.[30]

As discussed earlier, the duty to indemnify in an indemnity clause like the one in the Providence/Hoffman contract is not triggered until the indemnitee is liable for damages.[31] Providence has no liability here because the Brooks plaintiffs' claims were settled by Hoffman (together with USF & E's insurance carrier) without any payments by Providence. Also, there are issues of material fact as to ultimate liability for the Brooks plaintiffs' claims, because there are issues of fact as to causation of these injuries.[32] Therefore, we reverse the superior court's ruling that Hoffman owes Providence a duty of indemnity as a matter of law under the Providence/Hoffman contract.

### C. *The Superior Court Erred in Holding that USF & E Has No Duty to Defend Hoffman.*

In its November 20, 1998 order, the superior court denied Hoffman's motion for sum-

mary judgment, ruling that USF & E did not have a duty to defend Hoffman. Hoffman appeals this ruling.

In order to decide whether the superior court properly denied Hoffman's motion, we must address three issues: (1) the distinction between the duty to defend and the duty to indemnify; (2) the scope of the indemnity clause in the Hoffman/USF & E contract; and (3) the exceptions that could potentially apply to prevent enforcement of the Hoffman/USF & E contract. An analysis of these three issues shows that, as a matter of law, the indemnity clause in the Hoffman/USF & E contract requires USF & E to defend Hoffman under the circumstances presented here.

#### 1. *The distinction between the duty to defend and the duty to indemnify*

As discussed in Part IV.A.1 above, the duty to defend in an indemnity clause like the one in the Hoffman/USF & E contract is triggered when the indemnitee requires defense; however, the duty to indemnify is not triggered until the indemnitee is liable for damages. The duty to defend is triggered merely by claims of injury that fall within the scope of the indemnity clause.[33] Therefore, USF & E has a duty to defend Hoffman if the Brooks plaintiffs' claims are within the scope of the Hoffman/USF & E indemnity clause.

#### 2. *The Brooks plaintiffs' claims are within the scope of the Hoffman/USF & E indemnity clause.*

Like the Providence/Hoffman indemnity clause, the Hoffman/USF & E indemnity

---

**30.** In addition, the judgment declaring that Hoffman is liable for indemnification may be moot, since Providence asserted at oral argument that it had no claim for indemnification separate from defense costs.

**31.** *See Stephan & Sons, Inc. v. Municipality of Anchorage,* 629 P.2d 71, 73, 75–76 (Alaska 1981).

**32.** There is conflicting evidence in the record to support causation of the Brooks plaintiffs' alleged exposure by several different parties working at the Providence construction project. As Hoffman points out, the asbestos abatement contractors may have caused the alleged exposure by not adequately isolating the abatement areas where the construction was going on. Also,

Providence may have caused the alleged exposure because Providence actually directed and coordinated the asbestos abatement efforts, departed from the recommendations of its consultant EHS, and made the decision to proceed with asbestos abatement and other construction simultaneously. USF & E may have caused the alleged exposure because USF & E failed to inspect the area or provide safety gear before commencing work. And finally, Hoffman may have caused the alleged exposure by failing to coordinate the efforts of its subcontractors with the abatement contractors, as the superior court found.

**33.** *See Stephan & Sons,* 629 P.2d at 73, 75–76.

clause has two parts. The claims asserted by the Brooks plaintiffs are within the scope of both.

■ The first part of the indemnity clause in the Hoffman/USF & E contract holds USF & E liable for (i) any claims "directly or indirectly arising out of . . . any failure of [USF & E] to perform any of the terms and conditions of this Subcontract," or (ii) any claims arising out of the "performance of or failure to perform" USF & E's work under the subcontract.

USF & E argues that the Brooks plaintiffs' claims are not within the scope of this first part of the clause because USF & E did not breach any of its contractual obligations under the Hoffman/USF & E contract, and USF & E's performance had nothing to do with asbestos.

■ But, as we discussed in the context of the Providence/Hoffman contract, the phrase "arising out of [the indemnitor's] performance" is very broad and includes claims for any injuries sustained by the indemnitor's employees while on the job fulfilling the contract with the indemnitee.[34] It is undisputed that the alleged asbestos exposure occurred while USF & E employees were performing work contracted for by Hoffman—the "performance" referred to by the first part of the indemnity clause in the Hoffman/USF & E contract. Therefore, the Brooks plaintiffs' claims are within the scope of the first part of the Hoffman/USF & E indemnity clause.[35]

■ The second part of the Hoffman/USF & E indemnity clause makes USF & E responsible for any claims "arising from injuries, including death to [USF & E's] employees," unless the injuries were caused by or resulted from "the sole negligence of [Hoffman]."

The Brooks plaintiffs' claims are also within the scope of this second part of the indemnity clause. USF & E is responsible to defend Hoffman for all claims of injury to USF & E employees, unless the injury was caused by Hoffman's sole negligence. Since the Brooks plaintiffs were USF & E employees, and their alleged injuries were not caused by Hoffman's sole negligence, their claims are also within the scope of this second part of the indemnity clause.

3. *Alaska Statute 45.45.900, the "public duty" exception, the policy of "nondelegable duties," and the doctrine of "unclean hands" do not apply to prevent enforcement of the Providence/Hoffman indemnity clause.*

USF & E claims that the Hoffman/USF & E indemnity clause is rendered unenforceable for four reasons: (a) AS 45.45.900, (b) the "public duty" exception, (c) the policy of "nondelegable duties," and (d) the doctrine of "unclean hands." However, none of these apply under the circumstances, and the Hoffman/USF & E indemnity clause is fully enforceable.

a. *Alaska Statute 45.45.900*

As discussed earlier, AS 45.45.900 limits the enforceability of indemnification clauses, requiring that such clauses will not be enforced if they serve to indemnify the indemnitee from its own sole negligence or willful misconduct. USF & E claims that, "[b]ecause [the indemnity language in the Hoffman/USF & E subcontract] could be construed as requiring indemnity for Hoffman's sole negligence or willful misconduct, the entire indemnity clause is void."

But AS 45.45.900 only invalidates an indemnity clause if the clause purports to indemnify the indemnitee for the indemnitee's

---

34. *See supra* Part IV.A.2 (applying *Burgess v. State,* 614 P.2d 1380 (Alaska 1980) and *Duty Free Shoppers Group Ltd. v. State,* 777 P.2d 649 (Alaska 1989)).

USF & E asserts that extrinsic evidence that supports its claims should be considered. USF & E argues that because USF & E was not required to purchase insurance that would insure it from asbestos-related risks, and because USF & E was not able to do so even if it had tried, this indicates that the parties did not expect that the liability clause would shift asbestos-related liability to USF & E. This extrinsic evidence is not enough to narrow the scope of the broad Hoffman/USF & E indemnity clause.

35. Since the Brooks plaintiffs' claims "arise out of" USF & E's performance, we need not decide whether the Brooks plaintiffs' claims arose out of any breach by USF & E.

sole negligence or willful misconduct.[36] The Hoffman/USF & E indemnity clause does not purport to indemnify Hoffman for the sole negligence or willful misconduct of Hoffman or its abatement contractors; claims arising from the sole negligence or willful misconduct of Hoffman would be outside the scope of the indemnity clause.

The first part of the Hoffman/USF & E indemnity clause explicitly excludes USF & E from liability for any claims "caused by the sole negligence or willful misconduct of [Hoffman]." Therefore, this part of the Hoffman/USF & E indemnity clause complies with AS 45.45.900.

■■■ The second part of the Hoffman/USF & E indemnity clause, which makes USF & E responsible for any injuries sustained by USF & E employees while on the job, also explicitly excludes claims of injury caused by Hoffman's sole negligence, but does not explicitly exclude injuries caused by Hoffman's willful misconduct. Theoretically, the clause could be read to require a duty of defense for claims caused by Hoffman's willful misconduct. However, AS 45.45.900 does not apply to invalidate an indemnity clause merely because there is a theoretical possibility that the clause could be applied to indemnify the indemnitee for its willful misconduct. Instead, AS 45.45.900 only applies to invalidate an indemnity clause if the clause is actually applied, as between the parties, to indemnify an indemnitee for the indemnitee's own sole negligence or willful misconduct.[37] USF & E has not alleged, and no evidence in the record suggests, that the Brooks plaintiffs' alleged exposure was caused by Hoffman's willful misconduct. Therefore, AS 45.45.900 does not apply to invalidate the second part of the Hoffman/USF & E indemnity clause.

b. *The "public duty" exception*

■■■ We established the "public duty" exception to the enforcement of indemnity clauses in *Manson–Osberg Co. v. State*[38] and *Burgess Construction Co. v. State.*[39] We held in those cases that an indemnity clause will not be enforced where the clause serves to indemnify an indemnitee from its own negligence and tends to promote a breach of the indemnitee's duty to the public.[40] In *Burgess*, we articulated the two principles behind the "public duty" exception: (1) the exception applies to entities that must guard against negligence at all times, since indemnity agreements would create improper incentives for them to breach a duty owed to the public; and (2) public service entities should not be able to impose liability on those they are supposed to serve, since the recipients of the public service would have no choice but to accept that liability.[41]

USF & E claims that the "public duty" exception applies here to invalidate the Hoffman/USF & E indemnity clause because Hoffman "had an express contractual and legal duty to ensure safety of the workplace." USF & E claims that Hoffman breached this duty by allowing the Brooks plaintiffs' exposure to occur.

However, an examination of our decisions in which we have applied the "public duty" exception shows that the exception does not apply to the Hoffman/USF & E contract.

In two cases, *State v. Korean Air Lines Co.*[42] and *Kuhn v. State,*[43] we considered the "public duty" exception and held that it applied to invalidate the indemnity clauses at issue. In *Korean Air Lines*, the state attempted to enforce a clause indemnifying the state for its own alleged negligence in design of Anchorage International Airport.[44] In *Kuhn*, the state attempted to enforce an

---

**36.** *See supra* Part IV.A.3.a (applying *Aetna Cas. & Sur. Co. v. Marion Equip. Co.,* 894 P.2d 664, 670 (Alaska 1995)).

**37.** *See Rogers & Babler v. State,* 713 P.2d 795, 798 (Alaska 1986).

**38.** 552 P.2d 654, 659–60 (Alaska 1976).

**39.** 614 P.2d 1380, 1382 (Alaska 1980).

**40.** *See Manson–Osberg,* 552 P.2d at 659–60; *Burgess,* 614 P.2d at 1381–82.

**41.** *See Burgess,* 614 P.2d at 1381–82.

**42.** 776 P.2d 315 (Alaska 1989).

**43.** 692 P.2d 261 (Alaska 1984).

**44.** 776 P.2d at 315–16.

indemnity clause that was incorporated into required permits for use of the Dalton Highway.[45] The indemnity clause in *Kuhn* indemnified the state for claims related to maintenance of the Dalton Highway.[46] In these cases, we found that both of the "public duty" principles demanded that the indemnity clauses be invalidated because: (1) the clauses gave the state, as the owner and operator of the airport, and as the maintainer of the Dalton Highway, an incentive to exercise less caution in operating the airport and maintaining the Dalton Highway, to the detriment of its duty to protect the traveling public;[47] and (2) it is unfair for the state as a public service organization to shift its responsibilities to the public, since users of the airport and the Dalton Highway have no choice but to accept the state's terms in order to use the services.[48]

The Hoffman/USF & E indemnity clause is unlike the clauses considered in either *Korean Air Lines* or *Kuhn*. Hoffman's duties to its subcontractors are not public duties like the duties owed by the state to travelers on highways or at airports. Also, it is not unfair to impose a liability-shifting agreement on USF & E as it was in *Korean Air Lines* and *Kuhn*. In both *Korean Air Lines* and *Kuhn*, the indemnitors had no choice but to accept the indemnity clauses because they were dealing with a public service entity (the state) that controlled a unique resource (respectively, the Anchorage Airport and the Dalton Highway) critical to the indemnitors' business. USF & E, on the other hand, could have chosen other employment and rejected Hoffman's terms. Therefore, the "public duty" exception does not apply to the Hoffman/USF & E indemnity clause.

### c. The public policy of "nondelegable" duties

■ In two separate arguments, USF & E claims that the Hoffman/USF & E indemnity clause is unenforceable because the burdens it purports to shift from Hoffman to USF & E are "nondelegable." These burdens are (1) duties to protect its subcontractors' employees from harm, and (2) strict liability for asbestos activities.

First, USF & E claims that Hoffman has a nondelegable duty to protect its subcontractors' workers, and USF & E claims that this duty cannot be shifted to USF & E through an indemnity contract. Although USF & E cites several cases for the proposition that a general contractor has a legal duty to maintain a safe working environment for its subcontractor's employees, these cases do not apply to Hoffman's ability to shift liability contractually.[49] Even if Hoffman has a nondelegable duty that makes it liable under such circumstances, it can always shift this liability under Alaska law through an indemnity contract. Under Alaska law, indemnity agreements that shift liability from the indemnitee to the indemnitor are valid, subject to the restrictions of AS 45.45.900. As we held in *Burgess v. State* and *Duty Free Shoppers Group Ltd. v. State*, if an indemnity clause is broad enough it may indemnify regardless of the parties' liabilities or fault.[50]

Second, USF & E claims that Hoffman is strictly liable for its asbestos activities and that this strict liability cannot be transferred to another party, like USF & E, through an indemnity contract. USF & E cites several authorities for the proposition that asbestos work creates strict liability for the person directing the work.[51] It does not, however,

**45.** 692 P.2d at 262–63.

**46.** *Id.*

**47.** *See Korean Air Lines*, 776 P.2d at 318; *Kuhn*, 692 P.2d at 266.

**48.** *See id.*

**49.** *See Bachner v. Rich*, 554 P.2d 430, 444 (Alaska 1976) (holding that AS 18.60.075 creates legal duty for employers to keep workplace safe for employees); *State v. Marathon Oil Co.*, 528 P.2d 293, 297 (Alaska 1974) (same); *Kelley v. Howard S. Wright Constr. Co.*, 90 Wash.2d 323, 582 P.2d

500, 506 (1978) (general contractor has "nondelegable" duty to provide to subcontractor employees safe workplace).

**50.** *Burgess*, 614 P.2d 1380, 1382–83 (Alaska 1980); *Duty Free Shoppers*, 777 P.2d 649, 652–53 (Alaska 1989).

**51.** *See Karjala v. Johns–Manville Products Corp.*, 523 F.2d 155, 159 (8th Cir.1975) (holding that a manufacturer of asbestos can be strictly liable for asbestos exposure); *Jenkins v. T & N PLC*, 45 Cal.App.4th 1224, 53 Cal.Rptr.2d 642, 647 (1996) (holding that supplier of asbestos can be strictly

cite any relevant authority for the proposition that Hoffman cannot contractually shift this liability.[52] Strict liability, like the duties discussed above, can be freely shifted through an indemnity clause, as Hoffman and USF & E have done. We decline to create a new exception to the enforceability of indemnity agreements where these duties and liabilities are involved.

### d. *"Unclean Hands"*

USF & E, citing *Knaebel v. Heiner*,[53] claims that Hoffman cannot enforce the Hoffman/USF & E indemnity clause because Hoffman has "unclean hands."

■ *Knaebel* indicates that "unclean hands" is an equitable defense that requires a showing of "wrongdoing" by the other party: "In order to successfully raise the defense of 'unclean hands,' the defendant must show: (1) that the plaintiff perpetrated some wrongdoing; and (2) that the wrongful act related to the action being litigated." [54]

■ USF & E's "unclean hands" defense to enforcement of an indemnity clause is novel, but it is foreclosed by our previous decisions construing indemnity clauses. The only "wrongdoing" that USF & E has alleged here for the purposes of "unclean hands" is that Hoffman breached its "legal and contractual duty" to ensure workplace safety and protect USF & E employees from asbestos exposure—in other words, the "wrongdoing" consists only of negligence. However, in *Burgess v. State*,[55] *Duty Free Shoppers*

*Group Ltd. v. State*,[56] and *C.J.M. Construction, Inc. v. Chandler Plumbing & Heating, Inc.*,[57] we held that an indemnity clause that indemnifies the indemnitee for its own negligence is enforceable.[58] Thus, an allegation of negligence cannot suffice to raise the defense of "unclean hands." Allowance of this claim would create a broad exception to the enforceability of indemnity agreements, and would defeat the entire purpose of indemnification, which is to shift liability from one who is legally liable for an injury to another party in exchange for consideration. We conclude that the "unclean hands" defense should not be available to indemnitees merely because the indemnitor's negligence caused or had a role in the claim or injury that is the subject of indemnification.

We reverse the superior court's ruling that USF & E had no duty to defend Hoffman. USF & E has such a duty because the duty to defend requires only that the claimed injury be within the scope of the indemnity clause; the claims made by the Brooks plaintiffs are within the scope of the Providence/Hoffman clause. The indemnity clause is fully enforceable despite AS 45.45.900, the "public duty" exception, the policy of "nondelegable duties," and the "unclean hands" defense.

■ One further point must be made here concerning the scope of USF & E's duty to defend Hoffman. We have concluded that USF & E has a duty to defend Hoffman, and that therefore Hoffman is entitled to

---

liable for asbestos exposure); *Livingston Bd. of Ed. v. U.S. Gypsum Co.*, 249 N.J.Super. 498, 592 A.2d 653, 656 (1991) (same).

**52.** USF & E cites *Burgan v. City of Pittsburgh*, 115 Pa.Cmwlth. 566, 542 A.2d 583, 589 (1988) and *Widson v. International Harvester Co.*, 153 Cal.App.3d 45, 200 Cal.Rptr. 136, 146–47 (1984). However, these authorities do not support the proposition that strict liability cannot be shifted through indemnity contract. The court in *Burgan* refused to enforce an indemnity clause because of something similar to the "public duty" exception discussed earlier in this opinion: the indemnitee, as a blasting company, had a public duty to exercise the utmost care to protect the public from its operations; therefore, it was not allowed to transfer liability through an indemnity clause because of the incentive to exercise less care. 542 A.2d at 589. In *Widson*, the court was merely interpreting the scope of a general

indemnity clause, and the court refused to enforce the indemnity clause in *Widson* because the liability was strict liability and the clause concerned was only general in language, and not specific enough to cover the liability. 200 Cal. Rptr. at 146–47.

**53.** 663 P.2d 551 (Alaska 1983).

**54.** *Id.* at 554.

**55.** 614 P.2d 1380, 1382–83 (Alaska 1980).

**56.** 777 P.2d 649, 652–53 (Alaska 1989).

**57.** 708 P.2d 60, 64 (Alaska 1985).

**58.** Of course, this is subject to AS 45.45.900, discussed above.

reimbursement of its defense costs from USF & E. We have also concluded that Hoffman has a duty to defend Providence, and that therefore Providence is entitled to reimbursement of its defense costs from Hoffman. USF & E's duty to defend does not extend to Hoffman's costs for reimbursing Providence, and USF & E is not required to reimburse Hoffman for the payments that Hoffman must make to Providence. This is because USF & E only has a duty *to defend* Hoffman, and in this opinion we decline to hold as a matter of law that USF & E has a duty to indemnify Hoffman. Reimbursement of Hoffman's costs to Providence would be indemnification, rather than provision of a defense to Hoffman.

### D. *The Superior Court Properly Held that Hoffman Is Not Entitled to Summary Judgment on USF & E's Alleged Duty to Indemnify Hoffman.*

In its order denying Hoffman's motion for summary judgment against USF & E, the superior court held that Hoffman was not entitled to a ruling that USF & E had a duty to indemnify Hoffman as a matter of law. As noted earlier, we could only decide as a matter of law that there is a duty to indemnify if the indemnitee is liable for damages. Hoffman claims that it was liable for damages because it paid $25,000 in settlement to the Brooks plaintiffs, and Hoffman seeks indemnification from USF & E to cover this amount.

▪ Where there is an indemnity contract that includes both a duty to defend and a duty to indemnify, and the indemnitee makes a settlement payment to a third party, the indemnitee is entitled to indemnification for that payment when: (1) the indemnitor received adequate notice of underlying pro-

ceedings, (2) the indemnitee was potentially liable to the third party, and (3) the settlement was reasonable.[59] If the indemnitor did not receive actual notice, then the indemnitee must show actual liability in order to be entitled to indemnification.[60] While it is clear that USF & E received adequate notice of the underlying proceedings,[61] and of Hoffman's claim for indemnification,[62] we cannot say as a matter of law whether the $25,000 settlement payment was reasonable. Therefore, the superior court properly denied Hoffman's motion for summary judgment on USF & E's alleged duty to indemnify Hoffman.

### E. *The Superior Court Erred in Holding that USF & E Was Entitled to Implied Contractual Indemnity from Hoffman.*

Hoffman argues that the superior court's summary judgment in favor of USF & E on the issue of implied contractual indemnity should be reversed. The superior court granted USF & E's cross-motion for summary judgment against Hoffman. In doing so, the superior court implicitly held that Hoffman owed a duty of indemnity and defense to USF & E, since in this cross-motion USF & E requested such a ruling under a theory of implied contractual indemnity. In its order, the superior court did not explicitly hold that USF & E was entitled to implied contractual indemnity. However, the final judgment in favor of USF & E against Hoffman seems to indicate that USF & E is entitled to reimbursement of its defense costs. Because USF & E is not entitled to implied contractual indemnity as a matter of law, we reverse the superior court's ruling.

▪ The only other occasion that we have had to discuss implied contractual indemnity

---

**59.** See *Atlantic Richfield Co. v. Interstate Oil Transp. Co.*, 784 F.2d 106, 110–12 (2d Cir.1986); *Compania Sud Americana De Vapores, S.A. v. I.T.O. Corp. of Baltimore*, 940 F.Supp. 855, 869 (D.Md.1996); *In re Cooper Mfg. Corp.*, 131 F.Supp.2d 1238, 1252–55 (N.D.Okla.2001). Cf. *Theodore v. Zurich General Accident & Liability Ins. Co.*, 364 P.2d 51, 54–56 (Alaska 1961) (holding that insurer's duty to defend included obligation to reimburse insured for prudent settlement, where insured faced potential liability and

insurer refused tender of defense against that liability).

**60.** *See id.*

**61.** USF & E, along with Hoffman and Providence, was sued in the underlying proceedings.

**62.** Hoffman's cross-claim against USF & E asserted Hoffman's claim that USF & E had a duty to defend and indemnify Hoffman.

was in *Fairbanks North Star Borough v. Kandik Construction, Inc.*[63] In *Kandik Construction*, a design firm (Roen) contracted with Fairbanks North Star Borough to design a subdivision. The borough in turn contracted with a construction company (Kandik) to construct the subdivision. Kandik sued both Roen and the borough on contractual theories for defects in design of the subdivision, and sued Roen alone for professional malpractice. The borough filed a cross-claim against Roen for implied contractual indemnity. In *Kandik Construction*, we described implied contractual indemnity as a "three-part implied promise":

> The Borough's indemnity action was one for implied contractual indemnity, which rests on the principle that a contract to perform a service contains a three-part implied promise: 1) the indemnitor will perform the service in a proper manner, or 2) the indemnitor will discharge foreseeable damages resulting from improper performance, unless 3) the indemnitee's own participation in causing the damages precludes recovery.[64]

This model cannot be applied to the Hoffman/USF & E contract, because the contract "to perform a service" runs the other way in the Hoffman/USF & E contract: it was USF & E that contracted to perform a service for Hoffman, and yet USF & E is the party that seeks implied indemnity here. In *Kandik Construction*, the implied indemnitor was the party providing the service; however, if we were to apply implied contractual indemnity here, the implied indemnitor would be Hoffman, the party receiving the service. The *Kandik Construction* model for implied contractual indemnity simply does not fit the circumstances of the Hoffman/USF & E contract.

█ Moreover, to apply implied contractual indemnity here would contradict the express contractual will of the parties. Hoffman and USF & E signed a contract that shifted certain risks from Hoffman to USF & E. USF & E asks this court to completely reverse this shift, so that Hoffman would be fully liable for these risks. USF & E cites

no authority and provides no argument supporting the superior court's decision, and the superior court's decision itself is not supported. Because there is no support for such a radical shift in the contractual relationship between Hoffman and USF & E, we reverse the superior court's grant of USF & E's cross-motion on implied contractual indemnity.

## V. CONCLUSION

Because the Brooks plaintiffs' claims of injury are within the scope of both the Providence/Hoffman and Hoffman/USF & E indemnity contracts, we AFFIRM the ruling that Hoffman owes Providence a duty to defend, and we REVERSE the ruling that USF & E does not owe Hoffman a duty to defend. Because there are issues of material fact that preclude a ruling on the duty to indemnify under both contracts, we REVERSE the ruling that Hoffman owes Providence a duty to indemnify, and AFFIRM the ruling denying summary judgment on the issue of USF & E's duty to indemnify Hoffman. Finally, because implied contractual indemnity does not apply in this case, we REVERSE the grant of summary judgment for USF & E on the issue of implied contractual indemnity. We REMAND this case for proceedings consistent with this opinion.

---

**63.** 823 P.2d 632 (Alaska 1991).

**64.** *Id.* at 636.